In the Interest of D.J.W. and
M.G.L., Jr., Plaintiff.

Juvenile Officer, Respondent,

v.

C.L. (Natural Mother), Appellant,

D.W., Respondent.

Nos. WD 56054, WD 56055
and WD 56257.

Missouri Court of Appeals,
Western District.

June 8, 1999.

Laura Higgins Tyler, Kansas City, for appellant.

Bradley D. Honnold, Guardian Ad Litem, Robert Schieber, Kansas City, for Juvenile Officer, Kansas City.

Before HOWARD, P.J., ULRICH, J. and SMART, J.

ULRICH, Judge.

C.L. appeals the judgments of the juvenile court, in this consolidated appeal, placing the permanent custody of her minor son, M.G.L., in his paternal grandmother, and the permanent custody of her minor son, D.J.W., in his natural father. She also appeals the judgment of the juvenile court releasing M.G.L. from the jurisdiction of the court. C.L. claims that she was denied due process of law because the court entered the judgments without affording her notice and an opportunity to be heard. The judgments of the juvenile court are affirmed in part and reversed in part.

On June 18, 1992, and August 10, 1992, the juvenile officer filed amended petitions alleging that M.G.L., a male child born December 13, 1989, and D.J.W., a male child born March 31, 1988, were without proper care, custody and support. The petitions asserted that the children's mother, C.L., and their father, M.L., were incapable of properly caring for the children because the parents suffered from chronic paranoid personality disorder and chronic paranoid schizophrenia, respectively, which conditions are manifested in chronic, violent emotional outbursts. The petitions further alleged that D.J.W. displayed severe speech and other developmental delays for which C.L. neglected and refused to obtain evaluations and treatment. Following a hearing on the petitions, the juvenile court entered orders on January 29, 1993, finding that the children were in need of care and treatment and taking jurisdiction of them. The court placed M.G.L. and D.J.W. in the custody of their maternal grandmother under the supervision of the Division of Family Services (DFS). Finally, the court retained jurisdiction of the children and ordered a hearing in one year to review the order of disposition.

The January 1993 disposition orders remained in full force and effect until March 6, 1995, when the juvenile court terminated the orders concerning placement only and placed custody of the two minor boys in C.L. under the supervision of the DFS. In its March 1995 orders, the court again retained jurisdiction of the children and ordered a hearing in one year to review the orders.

On May 1, 1996, the children were detained in the custody of the DFS by orders of the juvenile court at the request of the juvenile officer pending a hearing on petitions or motions. The juvenile officer filed amended motions to modify the March 1995 orders on June 7, 1996, alleging that the children were without proper care, custody and support. The motions asserted that on April 12, 1996, the children were taken into protective custody at a bar/bowling alley by police officers who found C.L. on a bar stool, intoxicated and unconscious and subsequently abusive towards the officers.

A hearing was held on the motions to modify on December 5, 1996. After receipt of evidence, the court found that the children were in need of care and treatment and ordered placement of the children in the custody of C.L. and the DFS jointly. The court also ordered the implementation of Family Preservation Services and a psychological evaluation of C.L. The juvenile court also authorized the DFS to immediately remove the children from C.L.'s custody if C.L. consumes alcohol at any time. Finally, the court set a hearing in January 1997 to review the orders.

Hearings were held in January and February 1997 to review the December 1996 disposition orders. At each hearing, the juvenile court received evidence and ordered that the orders remain in full force and effect. The court then set a review hearing for January 1998.

The juvenile officer filed motions to accelerate review of the disposition orders on March 14, 1997, however, because the children had been removed from C.L.'s custody due to her use of alcohol. In August 1997, a hearing was held to review the December 1996 orders. Following receipt of evidence, the juvenile court terminated the orders of disposition as to placement only on August 25, 1997. It then ordered M.G.L. placed in the custody of his paternal grandmother and D.J.W. placed in the custody of his father under the supervision of the DFS. The court again retained jurisdiction of the children and ordered a hearing in one year to review the orders.

C.L. filed motions for judicial hearing to address her visitation with the children on September 15, 1997. On September 22, 1997, the juvenile court, on its own motion, set a hearing for October 23, 1997, to review the August 25, 1997 disposition orders. The hearing on the orders was continued until January 12, 1998. Following receipt of evidence, the court entered three orders. First, it ordered that the

August 1997 orders remained in full force and effect including the placement of the children. Second, the juvenile court ordered the DFS to secure a therapeutic assessment regarding the efficacy of C.L.'s supervised visitation with the children. Finally, the court ordered a hearing in February 1998 to review the orders of disposition.

The February 1998 hearing was continued, however, and on May 15, 1998, a hearing was held to review the January 1998 orders of disposition. After receiving evidence, the juvenile court ordered that the prior orders of disposition remained in full force and effect. It found that permanent[1] custody of M.G.L. in his paternal grandmother and of D.J.W. in his father would serve the children's best interests. The court also set a hearing in November 1998 to review the orders of disposition. Judgement was entered accordingly on June 4, 1998.

The DFS filed a request for release of jurisdiction on June 9, 1998, praying that the court release its jurisdiction over M.G.L. The juvenile court entered its order releasing M.G.L. from its jurisdiction on June 11, 1998, finding that the child was no longer in need of the services of the court. On August 24, 1998, the judgment was entered accordingly. This appeal followed.

In her first point on appeal, C.L. claims that the juvenile court erred in entering its judgments placing the custody of M.G.L. with his paternal grandmother and the custody of D.J.W. with his natural father. She contends that she was denied due process of law in that the judgments were entered without affording her notice that the court would be addressing the issue of custody of the boys and the opportunity to be heard on the issue. Specifically, she claims that she only received notice that

---

1. Although the juvenile court referred to its custody orders as being permanent, it retained jurisdiction of the children as it did in all previous orders and set a hearing in November 1998 to review the orders of disposition.

the court would be addressing the issue of visitation.

■ Review of juvenile court proceedings is analogous to review of court-tried cases. *In Interest of T.B.*, 936 S.W.2d 913, 914 (Mo.App. W.D.1997). The judgment of the juvenile court is affirmed unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

Section 211.031.1, RSMo 1994, confers exclusive original jurisdiction in the juvenile court in proceedings:

(1) Involving any child or person seventeen years of age who may be a resident of or found within the county and who is alleged to be in need of care and treatment because:

(a) The parents, or other persons legally responsible for the care and support of the child or person seventeen years of age, neglect or refuse to provide proper support, education which is required by law, medical, surgical or other care necessary for his well-being; except that reliance by a parent, guardian or custodian upon remedial treatment other than medical or surgical treatment for a child or person seventeen years of age shall not be construed as neglect when the treatment is recognized or permitted under the laws of this state;

(b) The child or person seventeen years of age is otherwise without proper care, custody or support; or

(c) The child or person seventeen years of age was living in a room, building or other structure at the time such dwelling was found by a court of competent jurisdiction to be a public nuisance pursuant to section 195.130, RSMo.

§ 211.031.1(1), RSMo 1994. When a child is found by the juvenile court to come within the applicable provisions of section 211.031.1(1), RSMo 1994, the court shall so

decree and make a finding of fact upon which it exercises its jurisdiction over the child. § 211.181.1, RSMo 1994. The court then may proceed as follows:

(1) Place the child or person seventeen years of age under supervision in his own home or in the custody of a relative or other suitable person after the court or a public agency or institution designated by the court conducts an investigation of the home, relative or person and finds such home, relative or person to be suitable and upon such conditions as the court may require;

(2) Commit the child or person seventeen years of age to the custody of:

(a) A public agency or institution authorized by law to care for children or to place them in family homes; except that, such child or person seventeen years of age may not be committed to the department of social services, division of youth services;

(b) Any other institution or agency which is authorized or licensed by law to care for children or to place them in family homes;

(c) An association, school or institution willing to receive the child or person seventeen years of age in another state if the approval of the agency in that state which administers the laws relating to importation of children into the state has been secured; or

(d) The juvenile officer;

(3) Place the child or person seventeen years of age in a family home;

(4) Cause the child or person seventeen years of age to be examined and treated by a physician, psychiatrist or psychologist and when the health or condition of the child or person seventeen years of age requires it, cause the child or person seventeen years of age to be placed in a public or private hospital, clinic or institution for treatment and care; except that, nothing

contained herein authorizes any form of compulsory medical, surgical, or psychiatric treatment of a child or person seventeen years of age whose parents or guardian in good faith are providing other remedial treatment recognized or permitted under the laws of this state.

§ 211.181.1, RSMo 1994. Once a child is initially taken under the jurisdiction of the juvenile court pursuant to sections 211.031 and 211.181, RSMo 1994, the juvenile court may retain continuing jurisdiction of the child under section 211.041, RSMo 1994, until he attains the age of twenty-one years. § 211.041, RSMo 1994.

■■■ A restriction of parental rights must be effected in accordance with due process of law. *In the Interest of Loveheart*, 762 S.W.2d 32, 33 (Mo. banc 1988). The first requirement of due process is that a parent must be provided sufficient notice that the parent's rights are to be challenged in the courts. *Id.* at 33–34. To satisfy the due process requirement, the notice must be "reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 34 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). "[I]t is the office of the petition to provide such notice, so that one whose rights are challenged may know what is relied upon as a cause of action in order that he may be prepared at trial to meet the issues raised by the petition." *In the Interest of M.J.S.*, 724 S.W.2d 318, 320 (Mo.App. W.D.1987). Notice is essential to the jurisdiction of the juvenile court. *Loveheart*, 762 S.W.2d at 34. The rights of a parent may not be adjudicated in the absence of notice to that party of the litigation. *Id.*

■■■ C.L. was given sufficient notice throughout the pendency of this entire case that her parental rights, including her rights to custody of the children, were being challenged in the juvenile court. First, the petitions filed by the juvenile officer on June 18, 1992, and August 10, 1992, alleging that M.G.L. and D.J.W. were without proper care, custody and support provided C.L. such notice. The petitions asserted that C.L., the children's mother, and M.L, their father, were incapable of properly caring for the children because they suffered from mental conditions that manifested themselves in chronic, violent emotional outbursts. The petitions prayed that the court enter judgments necessary for the best interests and welfare of the children. These petitions were sufficient to apprise C.L. that her parental rights might be restricted.

Furthermore, C.L. was provided notice prior to the May 15, 1998 hearing that her parental rights to the care, custody and management of her children were being challenged in that hearing. After the juvenile court took jurisdiction over M.G.L. and D.J.W. on January 29, 1993, pursuant to the petitions and sections 211.031.1(1) and 211.181.1, RSMo 1994, it placed the children with their maternal grandmother. The court also retained jurisdiction over the children under section 211.041 and for the next five years, entered various orders of disposition concerning all aspects of the children's welfare, including their placement. In each order of disposition, including the January 1998 order, which preceded the judgment complained of by C.L. on this appeal, the court ordered a subsequent hearing to review the prior order. Such orders by the court provided notice to C.L. that all aspects of the prior disposition order would be reviewed at the next scheduled hearing. C.L. received notice in the January 12, 1998 orders that the juvenile court would ultimately review all aspects of those orders, including placement of the children, on May 15, 1998. C.L., therefore, was not deprived of due process of law, and the trial court did not err in entering its judgments placing M.G.L. in the custody of his paternal grandmother

and D.J.W. in the custody of his father. Point one is denied.

In her second point on appeal, C.L. claims that the juvenile court erred in entering its judgment releasing M.G.L. from the jurisdiction of the court. She contends that she was denied due process of law in that the judgment was entered without affording her notice and an opportunity to be heard. Specifically, she claims that her counsel of record was not served with the DFS's request for release of jurisdiction as required by Rule 43.01(b).

Rule 115.04 governs the service and filing of all written pleadings in juvenile court proceedings subsequent to the original petition. It provides:

All written pleadings subsequent to the original petition, all motions other than those that may be heard ex parte, and all notices and other papers that are required to be served upon the parties shall be served upon each of the other parties affected thereby and filed with the court, in the manner set forth in Rule 43.01.

Rule 43.01 governs service and filing of pleadings and papers in civil actions subsequent to the original petition. Rule 43.01(a) requires service of pleadings, motions, and papers on all parties. Rule 43.01(a). Rule 43.01(a) must be read in conjunction with Rules 43.01(b) and (c), which define the manner in which service must be made. Rule 43.01(b) provides:

**Service—Upon Attorney.** Whenever under these rules, or any statutes of this state, service is required or permitted to be made upon a party represented by an attorney of record, the service shall be made upon the attorney unless service upon the party is ordered by the Court. When a party is represented by more than one attorney, service may be made upon any such attorney.

Under Rule 43.01(b), the requirement of service on an attorney is mandatory. *City of Carthage v. Fairview Realty and Dev. Co.*, 624 S.W.2d 886, 887 (Mo.App. S.D.

1981). When a party is represented by an attorney of record, service on the party is insufficient. *Id.* The theory underlying the rule is that "service of papers on the attorney rather than the party will expedite preparation of a case for prompt adjudication on the merits." 4 Wright & Miller, Federal Practice and Procedure § 1145 (2 nd ed.1987)(discussing a similar federal rule of civil procedure).

In this case, the DFS filed its request for release of jurisdiction of M.G.L. on June 9, 1998. C.L. and her former attorney, Suzanne Block, received notice of the filing. Suzanne Block, however, was granted leave to withdraw by the court as attorney of record on February 20, 1998. Ms. Block, therefore, was not C.L.'s attorney of record when the request for release of jurisdiction was filed, and the court was properly informed by the withdrawal of Ms. Block as C.L.'s attorney of record. From the limited record before this Court, Laura Higgins Tyler appears to have been C.L.'s attorney of record. Service of the request for release of jurisdiction, therefore, must have been made upon Ms. Tyler under Rule 43.01(b) unless the court ordered service upon C.L. The juvenile court did not order service upon C.L., and, therefore, service upon C.L. was insufficient. Because service of the request to release jurisdiction in this case was improper, the order releasing jurisdiction is reversed.

The judgments of the juvenile court are affirmed in part and reversed in part.

All concur.