38 P.3d 41

**MARA M., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, and Jonna M., Appellees.**

**No. 1 CA–JV 01–0059.**

Court of Appeals of Arizona, Division 1, Department C.

Jan. 22, 2002.

Robert S. Briney, Office of the Legal Defender, By Virginia Matté, Stephen J.P. Kupiszewski and Kathryn E. Kupiszewski, Phoenix, for Appellant.

Janet Napolitano, Attorney General, By Judy A. Sheirbon, Assistant Attorney General, Phoenix, for Appellees.

## OPINION

EHRLICH, Judge.

¶ 1 Mara M. appeals the severance of her parental rights to Jonna. She claims that service upon her attorney of the motion to terminate those rights violated her constitutional right to the due process of having service made upon her directly or by publication. For the following reasons, we affirm the judgment.

### FACTS AND PROCEDURAL HISTORY

¶ 2 While receiving court-ordered mental-health and substance-abuse treatment at the Maricopa County Mental Health Annex on November 1, 1999, Mara gave birth to Jonna.[1] Mara immediately accepted from the Arizona Department of Economic Security ("ADES") a ninety-day foster-care arrangement for the child. During the next month, with supervision, Mara saw Jonna at the offices of Child Protective Services ("CPS"). The visits went sufficiently well so that, as long as Mara continued taking medication and undergoing therapy, CPS planned a family reunification.

¶ 3 Mara was transferred to a supervisory care facility on December 6, and she visited Jonna the next day. However, two days later, she left the facility without permission and was arrested and jailed three weeks later on charges of prostitution. She admitted to CPS that she had been using crack cocaine on a chronic basis.

¶ 4 When Mara was released one week later, she again disappeared. On February 1, 2000, CPS was advised that Mara had been arrested for prostitution. ADES filed a dependency petition with regard to Jonna that day. Ariz.Rev.Stat. ("A.R.S.") § 8–841 (Supp.1999).

¶ 5 A hearing was held by the juvenile court on February 8. A.R.S. § 8–842 (Supp. 1999). From jail, Mara appeared by telephone at the pre-hearing conference, during which counsel was appointed for Mara and she waived service of process. A.R.S. § 8–843 (Supp.1999). Mara also authorized her attorney to stipulate that Jonna was dependent. The court adjudicated Jonna dependent and declared her to be a ward of the court. It also appointed a guardian ad litem ("GAL") for Mara.

¶ 6 After this hearing, Mara's CPS caseworker delivered to her a letter outlining the services available. He also provided Mara with CPS contact information, and he further explained that, should she fail to participate in the services offered to her, the juvenile court could terminate her parental rights.

¶ 7 The caseworker visited Mara two more times, but, when Mara was released from jail, she disappeared once more. Mara had not seen Jonna since December 7, and she made no effort to contact CPS or to participate in the services offered by the agency.

¶ 8 On April 4, 2000, a dependency disposition hearing was held, A.R.S. § 8–845 (Supp. 1999), attended by Mara's counsel and GAL but not by Mara. A CPS caseworker presented the agency's concurrent plan for fami-

---

1. The full name and location of Jonna's father were and are unknown. Mara has an unfortunate history of mental illness and drug abuse. In 1992, due to her neglect of her five older chil-

dren, the Arizona Department of Economic Security intervened and arranged a successful placement.

ly reunification or termination of parental rights.

¶9 Mara remained missing until June 2000, when she reappeared in jail. A CPS caseworker visited Mara and informed her of the services still available to her. However, when Mara was released from jail, she disappeared again.

¶10 Hearings regarding Jonna's dependency continued to be held. A.R.S. § 8–847 (1999). At the September 18 combined review and initial permanency hearing, A.R.S. § 8–861 (1999), Mara's counsel and GAL appeared without Mara. The juvenile court reiterated that, if Mara continued her pattern of failing to cooperate with CPS, her parental rights could be terminated.

¶11 At the permanency hearing held on November 16, because Mara's counsel had not heard from her since February, he moved to withdraw from the case. The juvenile court granted the motion. Because Mara had neither seen Jonna for nearly a year nor contacted CPS, and because CPS had been unable to locate her, the court also ordered ADES to file a motion to sever Mara's parental rights to Jonna. A.R.S. § 8–862(D)(1)(Supp.1999). ADES did as directed, alleging Mara's abandonment of the child, her neglect of the child, and her willful refusal to remedy the circumstances that had caused Jonna to be in an out-of-home placement for more than nine months. A.R.S. § 8–863(B)(Supp.1999).[2]

¶12 A severance hearing was held one month later. A.R.S. § 8–863 (Supp.2000). Although he still had not been in contact with Mara, her former counsel appeared and asked to be reappointed. The juvenile court granted the request. The State then handed

Mara's counsel the motion to terminate Mara's parental rights. A.R.S. § 8–863(A). Mara's counsel in turn moved for an alternative service of process either on Mara in person or by publication.

¶13 The severance hearing was continued to February 22, 2001. At that time, the juvenile court denied the motion for an alternative service of process, and it found that termination of Mara's parental rights was in Jonna's best interests. A.R.S. § 8–863. A formal order consistent with those findings was signed later.

¶14 Mara appealed. ARIZ. R.P. JUV. CT. 88(A)("Any aggrieved party may appeal from a final order of the juvenile court to the court of appeals."). She argues that, to the extent that A.R.S. § 8–863 permits service on her attorney of the motion to terminate her parental rights rather than service upon her personally or by publication, it violates her right to due process and therefore is unconstitutional.

## DISCUSSION

¶15 Our review of the juvenile court's statutory interpretation is *de novo*. *In re Paul M.*, 198 Ariz. 122, 123 ¶1, 7 P.3d 131, 132 (App.2000). Similarly, the constitutionality of a statute is reviewed *de novo*, *Arizona Dep't of Pub. Safety v. Superior Court (Falcone)*, 190 Ariz. 490, 494, 949 P.2d 983, 987 (App.1997), and the burden of showing that a statute is unconstitutional is on the person challenging the statute. *Maricopa County Juv. Action No. JT9065297*, 181 Ariz. 69, 81, 887 P.2d 599, 611 (App.1994).

¶16 The Legislature added A.R.S. § 8–863 in 1997 as one of a number of changes to the

2. "The court may terminate the parental rights of a parent if the court finds by clear and convincing evidence one or more [of] the grounds prescribed in § 8–533." Section 8–533(B)(1999) provides:

Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following, and in considering any of the following grounds, the court shall also consider the best interests of the child:
1. That the parent has abandoned the child.
* * *
7. That the child is being cared for in an out-of-home placement under the supervi-

sion of the juvenile court, [ADES] or a licensed child welfare agency, that the agency responsible for the care of the child has made a diligent effort to provide appropriate reunification services and that either of the following circumstances exists:
(a) The child has been in an out-of-home placement for a cumulative total period of nine months or longer pursuant to court order and the parent has substantially neglected or wilfully refused to remedy the circumstances which cause the child to be in an out-of-home placement.

juvenile laws in its effort to accelerate the process by which parental rights are terminated so that children can be adopted more readily and at an earlier age. *See* 1997 Ariz. Sess. Laws, ch. 222, §§ 1–84. The statutory procedure became that, if the juvenile court was persuaded that severance was in the best interests of the child, it set a hearing, A.R.S. § 8–862(D)(1997), notice of which would be served on the child's parent or guardian. A.R.S. § 8–863(A)(3)(1997).

¶ 17 A year later, A.R.S. § 8–862 and § 8–863 were rewritten to be in substance as they are presently. *See* 1998 Ariz. Sess. Laws, ch. 276, §§ 35, 36. Now the law requires that, if the juvenile court determines that the termination of parental rights is in the best interests of the child, it must order either ADES or the child's attorney or GAL to file "a motion alleging one or more of the grounds prescribed in § 8–533 for termination of parental rights." A.R.S. § 8–862(D)(1) (Supp. 2000).

¶ 18 Additionally, A.R.S. § 8–863(A) (Supp. 2000) now states that:

> At least ten days before the initial hearing on the termination of parental rights pursuant to this article, the party who is responsible for filing a motion pursuant to § 8–862, subsection D shall serve the motion on all parties as prescribed in rule 5(c) of the Arizona rules of civil procedure....

¶ 19 Arizona Rule of Civil Procedure ("Rule") 5(c) governs the service of documents, other than a complaint, in a civil proceeding. Subsection 1 delineates how a document is to be served prior to judgment:

> *Whenever under these rules service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party is ordered by court.* Service upon the attorney or upon a party shall be made by delivering a copy

to the attorney or party or by mailing it to the attorney or party at the attorney's or party's last known address .... *Delivery of a copy within this rule means: handing it to the attorney or to the party ....*

(Emphasis added.) Subsection 2 dictates that post-judgment service must be upon the party personally or by publication.

¶ 20 The State delivered to Mara's counsel the motion to terminate Mara's parental rights to Jonna. The juvenile court found that compliance with Rule 5(c)(1) comported with due process, and it is this ruling of which Mara complains. She contends that, if A.R.S. § 8–863 permits Rule 5(c)(1) service on her attorney, it is unconstitutional. The constitutionality of the statute is preserved, she maintains, only by construing it to require that the motion be served as prescribed by Rule 5(c)(2), that is by requiring service upon her personally or by publication. By her invocation of Rule 5(c)(2), the premise for Mara's argument is that the adjudication of dependency was a final judgment.

¶ 21 ADES responds that dependency is not a final judgment for this purpose. Rather, it argues, once the child is declared dependent and a ward of the juvenile court, the court retains jurisdiction until there is a permanent disposition. *See* A.R.S. § 8–532(A)(1999);[3] *see also* A.R.S. § 8–202(G)(Supp.2000);[4] ARIZ. R.P. JUV. CT. 88(F);[5] *Yavapai County Juv. Action No. J–8545,* 140 Ariz. 10, 14, 680 P.2d 146, 150 (1984). Because the declaration of dependency is only an interim, albeit appealable, order, service on the parent's attorney as provided in Rule 5(c)(1) is proper. We agree.

■ ¶ 22 An order declaring a child dependent is "final" to the extent that it is an appealable order. *Juv. Action No. J–8545,* 140 Ariz. at 15, 680 P.2d at 151; *Rita J. v. Arizona Dep't of Economic Sec.,* 196 Ariz.

---

3. "The juvenile court shall have exclusive original jurisdiction over petitions to terminate the parent-child relationship when the child involved is present in the state."

4. "Except as otherwise provided by law, jurisdiction of a child that is obtained by the juvenile court in a proceeding under [A.R.S. § 8–801 *et seq.*] shall be retained by it for the purposes of

implementing the orders made and filed in that proceeding...."

5. "During the pendency of an appeal, the juvenile court may proceed within its legal authority on an issue remaining before it or newly presented to it to the extent ... (3) applicable statutory law or judicial rule confers continuing jurisdiction on the juvenile court...."

512, 513 ¶ 4, 1 P.3d 155, 156 (App.2000). It is not "final" in the sense that it terminates the proceedings. As the court said in *No. J–8545*, 140 Ariz. at 14, 680 P.2d at 150,[6] a finding of dependency, while constituting an appealable order, simply "triggers" a future, conclusive determination of the child's fate. There is not then in these proceedings "one and only one 'final' order." *Id.* Rather than disposing of all matters, a determination of dependency is "only the first step in an effort to provide for minor children who are not being adequately cared for." *Id.* Instead, the court retains jurisdiction until there is an ultimate adjudication. *See id.* at 15, 680 P.2d at 151. As the resolution of an interim proceeding, the determination of dependency closes a chapter in the child's life; it does not conclude the book, which is a final disposition in the best interests of the child. Therefore, a motion to terminate a parent's rights, being in furtherance of the exercise of the juvenile court's continuing authority, A.R.S. § 8–202(G)(Supp.2000); ARIZ. R.P. JUV. CT. 88(F)(3), need not be served personally on the parent or by publication, as Rule 5(c)(2) requires of post-judgment motions, but may be served on the parent's attorney as provided by Rule 5(c)(1). In other words, while A.R.S. § 8–863 requires that a motion to terminate parental rights be served pursuant to Rule 5(c), subsection 1 applies because such a motion does not seek to modify, vacate or enforce a final judgment.

¶ 23 The question then becomes whether the motion to terminate parental rights, served on Mara's counsel in accord with Rule 5(c)(1), complied with the process due her by the United States Constitution. Mara argues that, because parenting is her fundamental right, due process requires that the motion to terminate be served on her either in person or by publication, but that service on her attorney is unlawful.

¶ 24 Because a parent indeed does have a fundamental interest in the care, custody and control of her child, a right that is protected by the Due Process Clause of the United States Constitution, *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Toni W. v. Arizona Dep't of Economic Sec.*, 196 Ariz. 61, 65 ¶ 13, 993 P.2d 462, 466 (App.1999), when the State acts to terminate this right, it must provide appropriate fair procedures. *Santosky*, 455 U.S. at 753–54, 102 S.Ct. 1388. This includes "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *Maricopa County Juv. Action No. JS–501904*, 180 Ariz. 348, 355, 884 P.2d 234, 241 (App.1994)(quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

¶ 25 This test does not preclude the service of a motion to terminate parental rights on the parent's counsel, however. Indeed, Mara's situation presents a good example of a case in which service on a parent's attorney would be as reasonable a means as possible to apprise the parent of the action and its significance and protect the parent's rights accordingly—as would be if the parent consistently had kept contact with and appeared through counsel.

¶ 26 Significantly, Mara has neither alleged that she lacked actual notice of the possibility that her parental rights would be terminated nor claimed prejudice. Both the juvenile court and CPS advised her directly and through her counsel that her failure to comply with their directions to obtain services could result in the termination of her parental rights, warnings that are important factors in considering whether Mara had notice that her rights were in jeopardy. *In re D.J.W.*, 994 S.W.2d 60, 64 (Mo.Ct.App.1999); *In re Bush*, 113 Idaho 873, 749 P.2d 492, 494 (1988).[7]

---

**6.** The court was interpreting what then was Arizona Rule of Juvenile Court Procedure 24(a) but now is Rule 88(A), quoted above.

**7.** Mara relies on *Maricopa County Juvenile Action No. JS–5860*, 169 Ariz. 288, 818 P.2d 723 (App.1991), in which case the court held that service on the parent's attorney was insufficient

and that personal service of a motion to terminate parental rights was required. That case is inapposite because the parent never had appeared in the dependency proceedings and did not know that an attorney had been appointed to represent her. In addition, the case involved a petition being amended to seek the severance of the mother's rights to two of her children not

¶ 27 Also, should the situation warrant, Rule 5(c)(1) is qualified; it permits "service ... upon the attorney unless service upon the party is ordered by court." Therefore, should the juvenile court determine that service of a motion to terminate parental rights is not a reasonable means to apprise the parent of the pendency of the proceedings, it can order service directly on the parent. No such order was issued in this case.

 ¶ 28 The only issue remaining is whether service on Mara's counsel was reasonably calculated, under the circumstances, to apprise Mara of the termination hearing. Mara's attorney previously had accepted service and stipulated to Jonna's dependent status with Mara's knowledge and approval, and he had appeared several times on her behalf. Certainly he proved able to protect Mara's interests, and she never withdrew her consent to his representation. We appreciate that, when he was served with the motion to terminate Mara's parental rights, counsel had not been in contact with Mara for several months. But we also recognize that Mara was on notice of the possibility that her parental rights to Jonna could be terminated and yet she had not contacted either her

attorney or CPS. Nor had CPS been able to locate Mara except when she was in jail. Realistically, service of process on counsel in a case such as this may not in fact apprise a parent such as Mara of the pendency of termination proceedings, but, nonetheless, it is a means reasonably calculated under the circumstances to notify the parent and to protect her rights as opposed to attempted service on a person who has disappeared or service by publication. We do not find the application of A.R.S. § 8–863 and Rule 5(c)(1) to be unconstitutional.

## CONCLUSION

¶ 29 The order terminating Mara's parental rights is affirmed.

CONCURRING: REBECCA WHITE BERCH, Judge and MICHAEL D. RYAN, Judge.

---

named before. Unlike the situation in which the child to whom the rights are being severed already is before the court, this would be a new claim or cause of action requiring the service of process on the parent and not on her attorney. *Rouzaud v. Marek,* 166 Ariz. 375, 802 P.2d 1074 (App.1990); too is inapposite because it

involved the service on the mother's attorney of the father's petition seeking a modification of an order fixing child custody. Rule 5(c)(2) does apply to a modification of a final order.