126 P.3d 154

**VERONICA T., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Sarah T., and Matthew O., Appellees.**

No. 1 CA–JV 05–0038.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 27, 2005.

Terry Goddard, Attorney General, By Kesha A. Hodge, Assistant Attorney General, Phoenix, Attorneys for Appellee Arizona Department of Economic Security.

Law Office of Patricia O'Connor By Patricia O'Connor, Chandler, Attorney for Appellant.

Robert D. Rosanelli, Phoenix, Guardian ad Litem for Appellant.

## OPINION

BARKER, Judge.

¶ 1 We are presented here with issues of first impression relating to the statutory scheme for permanency hearings in a proceeding terminating parental rights. Resolution of the issues turns on whether the statutes and applicable court rules permit more than one permanency hearing. We determine that they do.

### Facts and Procedural History

¶ 2 On July 12, 2003, the Arizona Department of Economic Security ("ADES") re-

**8**

ceived a report that Veronica T. ("appellant") and her four minor children had been taken to Winslow Memorial Hospital. Appellant had been previously diagnosed as bi-polar and as having an anxiety disorder. All four children were taken into temporary custody by ADES. This appeal concerns only the two youngest: Sarah T., born September 30, 1993, and Matthew O., born June 25, 2000.[1]

¶ 3 ADES filed a dependency petition and petition for paternity and/or child support on July 17, 2003. In the petition, ADES alleged that upon admission to the hospital, appellant was observed to be yelling and screaming in an incoherent manner. ADES also alleged that appellant admitted to using methamphetamine and tested positive for it while in the hospital, threatened to kill her children, verbally and physically abused her children, was homeless and unemployed at the time she was admitted to the hospital, and therefore had no means to care for the children.

¶ 4 On July 22, 2003, the juvenile court held a preliminary protective hearing pursuant to Arizona Revised Statutes ("A.R.S.") section 8–824 (Supp.2005), during which appellant was advised of her rights and contested the allegations of the petition. On October 7, 2003, the juvenile court held a contested dependency hearing. The juvenile court found by a preponderance of the evidence that the allegations in the dependency petition were true. It also found that the children were dependent as to appellant based on appellant's mental illness, her use of methamphetamine, and because she was homeless and unemployed at the time the dependency petition was filed. In accordance with the family reunification case plan, appellant agreed to participate in a psychological evaluation, psychiatric treatment, urinalysis testing, substance abuse treatment, parent aide services, and visitation.

¶ 5 On June 22, 2004, the juvenile court held the report and review hearing, along with a permanency hearing. The juvenile court found that appellant had not complied with the case plan and that the children would remain wards of the court, though it found the goal of family reunification to be appropriate. The juvenile court also found that ADES had made reasonable efforts to finalize the permanency plan.

¶ 6 On September 14, 2004, the juvenile court held another report and review hearing and found that the case plan should be changed from family reunification to severance and adoption. On September 24, 2004, ADES filed its motion for termination of parent-child relationship as to Sarah T. and Matthew O.

¶ 7 At the time set for the initial severance hearing on October 28, 2004, appellant requested a jury trial. The matter was scheduled for mediation on December 1, 2004 and a pretrial conference on December 7, 2004.

¶ 8 At the pretrial conference on December 7, 2004, the juvenile court scheduled a four-day jury trial to begin on January 25, 2005. Counsel for appellant objected "to waiving or extension of time limits in the event [the scheduled trial] is beyond the [time] limits" set forth in A.R.S. § 8–862(D)(2) (Supp.2004) and Arizona Rule of Procedure for the Juvenile Court ("Rule") 66(B). These provisions require, among other things, that the trial take place within ninety days of the permanency hearing. A.R.S. § 8–862(D)(2); Ariz. R.P. Juv. Ct. 66(B). Consequently, ADES requested that the juvenile court dismiss the prior termination motion and use the pretrial conference as a permanency hearing instead. The juvenile court dismissed the prior termination motion, designated the conference a permanency hearing, and rescheduled appellant's jury trial to begin on February 22, 2005.

¶ 9 On December 8, 2004, ADES filed a motion for termination of parent-child relationship. On January 3, 2005, appellant moved to dismiss this motion. She argued that "[u]nder Rule 66, the deadline for trial of this severance was 90 days after the June 22, 2004 permanency hearing" and the juvenile court did not have power to hold a second permanency hearing. Appellant's motion to dismiss was denied.

---

1. The parental rights of the children's fathers, Kenneth T., Sr. and Erron P., are not at issue in this case.

¶ 10 A jury trial was held from February 22 through February 25, 2005. The jury found that severance was appropriate pursuant to A.R.S. § 8–533(B) subsection (3) (Supp.2005), (based on mental illness, mental deficiency, or chronic substance abuse), subsection (8)(A) (based on an out-of-home placement of nine months or longer and the parent's substantial neglect or willful refusal to remedy the circumstances), and subsection (8)(B) (based on an out-of-home placement of fifteen months or longer during which the parent has been unable to remedy the circumstances and "a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future"). The jury also found the termination of the parent-child relationship to be in the best interest of the children. A.R.S. § 8–533(B).

¶ 11 The juvenile court entered judgment terminating appellant's parental rights as to Sarah T. and Matthew O. Appellant timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) (2003), 12–2101(B) (2003), and 8–235(A) (Supp.2005).

### Discussion

■ ¶ 12 Appellant argues that the juvenile court erred when it held two permanency hearings and conducted a hearing on a motion to terminate parent-child relationship more than ninety days after the first permanency hearing. We review the juvenile court's scope of authority in this case de novo. *See Simms v. Napolitano,* 205 Ariz. 500, 502, ¶ 9, 73 P.3d 631, 633 (App.2003) (questions of statutory interpretation are reviewed de novo); *Mara M. v. Ariz. Dep't of Econ. Sec.,* 201 Ariz. 503, 505, ¶ 15, 38 P.3d 41, 43 (App.2002).

### 1. Two Permanency Hearings

¶ 13 The law governing permanency hearings provides the following:

The court shall hold a permanency hearing to determine the future permanent legal status of the child:

1. Within thirty days after the disposition hearing if the court does not order reunification services.

2. In all other cases, within twelve months after the child is removed from the child's home. The court shall not continue the permanency hearing beyond twelve months after the child is removed from the child's home unless the party who is seeking the continuance shows that the determination prescribed in § 8–829, subsection A, paragraph 3 has been made or will be made within the time prescribed in that paragraph.

A.R.S. § 8–862(A)(1)–(2) (Supp.2005). Appellant contends that the statute authorizes only *one* permanency hearing and the court committed a procedural violation when it held two. The state counters that § 8–862(A) contains no such restriction. We agree with the state.

¶ 14 In this case, the first permanency hearing was conducted within one year of Sarah T. and Matthew O. being removed from the home.[2] This complied with the statutory requirement that the court "hold a permanency hearing" within twelve months of the children being removed from the home. *Id.* The second permanency hearing, to which appellant objects, was held approximately seventeen months after Sarah T. and Matthew O. were removed from the home.[3] Although appellant asserts that the second hearing was unauthorized, she is unable to point to anything in the statute that would *prevent* subsequent hearings. We must ascertain the legislature's intent in order to determine whether appellant may nevertheless be correct. *See Ariz. Dep't of Econ. Sec. v. Superior Court,* 186 Ariz. 405, 408, 923 P.2d 871, 874 (App.1996).

¶ 15 Arizona enacted §§ 8–861, 8–862, and related statutes to comply with the requirements of the federal Adoption and Safe Families Act ("ASFA") "in order to be eligible for federal child welfare funding and to attain the Act's goals and objectives, which include providing 'an expedited process to find ...

---

2. The children were removed from the home on July 12, 2003. The first permanency hearing was held on June 22, 2004.

3. The second permanency hearing was held on December 7, 2004.

children [in temporary placements] permanent homes.'" *Rita J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 512, 514, ¶ 5, 1 P.3d 155, 157 (App.2000) (quoting *In re Lilley*, 719 A.2d 327, 334 n. 5 (Pa.Super.Ct.1998)); *see* Kurtis A. Kemper, Annotation, *Construction and Application by State Courts of the Federal Adoption and Safe Families Act and its Implementing State Statutes*, 2003 A.L.R.5th 3, § 2 (2003 & Supp.2005) (stating Congress enacted ASFA "to promote the adoption of children ... in foster care."). In order to increase adoptions, "ASFA accelerated key procedural requirements at the trial court level. Among other things, ASFA requires the *first* permanency hearing to be held twelve months from the time a child first enters foster care, rather than the previous duration of eighteen months." Susan C. Wawrose, *"Can We Go Home Now?": Expediting Adoption and Termination of Parental Rights Appeals in Ohio State Courts*, 4 J.App. Prac. & Process 257, 260 (2002) (emphasis added). Furthermore, ASFA outlines a time frame for *subsequent* permanency hearings when the child remains in foster care. 42 U.S.C.A. § 675(5)(C) (2005) (stating the "permanency hearing [is] to be held ... no later than 12 months after the date the child is considered to have entered foster care ... (*and not less frequently than every 12 months thereafter* during the continuation of foster care), which hearing shall determine the permanency plan for the child") (emphasis added).

¶ 16 In 2001, §§ 8–861 and 8–862(A)(2) were amended to incorporate "judicial determinations and respective time frames that are required by federal rules." Senate Fact Sheet for S.B. 1072, 45th Leg., 1st Reg. Sess. (Ariz.2001), *available at* http://www.azleg .state.az.us/ legtext/45leg/ 1r/summary/ s.1072fs_revised_asenacted.doc.htm. The changes were made to require a "judicial determination of *reasonable efforts* to finalize the permanent plan within 12 months" of removal. *Id.* (emphasis added). Further, § 8–862(A) specifically incorporates § 8–829(A)(3) which codifies the "reasonable efforts" standard with respect to finalizing the permanency plan. A.R.S. § 8–829(A)(3) (Supp.2005). Section 8–829(A)(3) also pro-

vides for the prospect of subsequent permanency hearings:

> The court shall make ... the following determinations within the following time periods:
>
> . . . .
>
> Within twelve months after the child is removed from the child's home *and once every twelve months thereafter*, whether *reasonable efforts* have been made to finalize the existing permanency plan.

*Id.* (emphasis added).

¶ 17 Also in the 2001 amendment, the legislature deleted language found in the previous version of A.R.S. § 8–861 that required the court to hold an *"initial* permanency hearing" within twelve months of removal of the child. *See* A.R.S. § 8–861(A)(2001) (emphasis added). Appellant argues that deleting the reference to "initial" means that there can be only one permanency hearing. We disagree.

¶ 18 The purpose of a permanency hearing is to "determine the future permanent legal status for the child." Ariz. R.P. Juv. Ct. 60(A). We have recognized previous legislative amendments that accelerate the process for terminating parental rights as an effort to ensure "that children can be adopted more readily and at an earlier age." *Mara M.*, 201 Ariz. at 505–06, ¶ 15, 38 P.3d at 43–44. The legislative purpose of the time frame in § 8–862 is to give stability and permanency to those children whose parents have not met their responsibilities in as prompt a fashion as such a serious matter permits. As noted, the statute does not preclude more than one permanency hearing to meet this objective. A.R.S. § 8–862(A) (Supp.2005). Further, § 8–862(A) specifically references § 8–829(A)(3) which provides that "[w]ithin twelve months after [removal] and *once every twelve months thereafter*," the court must determine whether "reasonable efforts have been made to finalize the existing permanency plan." (Emphasis added.) Thus, § 8–829(A)(3) authorizes subsequent permanency hearings if the reasonable efforts test is timely met.

¶ 19 On January 5, 2004, pursuant to § 8–829, the juvenile court expressly determined that ADES made every reasonable effort to establish permanency. This determination was made within a year of Sarah T. and Matthew O.'s removal from the home. On October 7, 2004, the juvenile court again made that determination. The following facts support those determinations. The juvenile court initially approved a case plan for reunification in October 2003. The court established a case plan which included appellant participating in a psychological evaluation, urinalysis testing, substance abuse treatment, parent aide services and visitation. At the permanency hearing on June 22, 2004, the juvenile court noted appellant's failure to comply with the case plan. It was appellant's continued failure to comply with the case plan that prompted the juvenile court to change its course of action and move forward with a plan of severance. Because the "reasonable efforts" standard of § 8–829(A)(3) was timely met, that statute permitted a subsequent permanency hearing within twelve months of the October 7, 2004 hearing. The second permanency hearing on December 7, 2004 was well within that time period.

■ ¶ 20 To now do as appellant requests, and strike down the subsequent permanency hearing, would be contrary to the authority granted by §§ 8–862(A) and 8–829(A)(3). Appellant's construction is also directly contrary to what the legislature intended when enacting the current versions of §§ 8–861 and 8–862(A). *Supra* ¶¶ 14–15. We recognize the legislature deleted the term "initial" from its amended version of § 8–861(D) (2001). However, we do not construe a statute susceptible to multiple interpretations to mean something directly contrary to the legislature's expressed intent. *See State v. Sweet,* 143 Ariz. 266, 269–70, 693 P.2d 921, 924–25 (1985) (stating that when a statute can be interpreted in more than one way the court must look to the legislative intent to determine its meaning).

¶ 21 Additionally, the extended time frame provided in the case was intended to benefit appellant by enabling her to comply with the reunification plan. Appellant never explains how she was prejudiced by having two permanency hearings. Failure to comply with the Arizona Rules of Procedure for Juvenile Court is not structural error and does not necessarily require reversal. *See In re Melissa K.,* 197 Ariz. 491, 494, ¶¶ 8–10, 4 P.3d 1034, 1037 (App.2000) (noting that the failure to comply with the rules may or may not require reversal). The court gave appellant more, rather than fewer, opportunities to assert her parental rights. *See Mara M.,* 201 Ariz. at 507, ¶ 24, 38 P.3d at 45 ("[W]hen the State acts to terminate [parental rights], it must provide appropriate fair procedures."). Appellant was provided counsel and received a four-day jury trial at which she had the opportunity to present her case. She points us to no fact or testimony that was unavailable because the court gave her more time to comply with the reunification case plan.

¶ 22 The subsequent permanency hearing allowed here was appropriate pursuant to §§ 8–861, 8–862(A) and 8–829(A)(3). There was no error on these grounds.

## 2. *Termination Adjudication Hearing*

■ ¶ 23 Appellant also claims that the juvenile court "circumvented the Rules of Procedure" when it held an adjudication hearing on the motion for termination of the parent-child relationship more than ninety days after the first permanency hearing. Rule 66(B) states, in relevant part, that "[i]f a motion for termination of parental rights was filed, the termination adjudication hearing shall be held no later than ninety (90) days after the permanency hearing." *See also* A.R.S. § 8–862(D)(2) (stating that "[i]f the termination is contested . . . the court shall set a date for the trial on termination of parental rights within ninety days after the permanency hearing").

¶ 24 In the present case, the first permanency hearing was held on June 22, 2004. The second permanency hearing was held on December 7, 2004, and the jury trial (the equivalent of an "adjudication hearing" for purposes of Rule 66(B)) for ADES's re-filed motion was set to begin on February 22, 2005. Because we hold that the second permanency hearing on December 7 was author-

ized, we use that date to determine whether the juvenile court complied with Rule 66(B) and § 8–862(D)(2). Appellant's jury trial took place as scheduled from February 22 to February 25, 2005. This was within ninety days of December 7, 2004 and satisfied the requirements of Rule 66(B) and § 8–862(D)(2). Therefore, appellant is not entitled to relief on the theory that Rule 66(B) and § 8–862(D)(2) were violated.

### Conclusion

¶ 25 For the foregoing reasons, we affirm the juvenile court's order.

CONCURRING: DONN KESSLER and JAMES B. SULT, Judges.

