2009 OK CIV APP 15
IN THE MATTER OF C.A., Alleged Deprived Child.
PIPER ACCETTELLA, Appellant,
v.
STATE OF OKLAHOMA, Appellee.
Case Number: 105955
Court of Civil Appeals of Oklahoma, Division IV
Mandate Issued: February 5, 2009
Decided: January 9, 2009
Andrew S. Harlow, Ardmore, Oklahoma, for Appellant.
Carrie Hixon, Assistant District Attorney, Waurika, Oklahoma, for State of Oklahoma.
James H. Ivy, Waurika, Oklahoma, for Child.
DOUG GABBARD II, PRESIDING JUDGE:
¶ 1 Piper Accettella (Mother) appeals the trial court's order terminating her parental rights. After reviewing the facts and the law, we affirm.

FACTS
¶ 2 C.A. (Child) was born in early 2006. A few months later, Child was adjudicated deprived and placed in the custody of the Department of Human Services (DHS). Although the record is sparse,[1] adjudication was based upon the fact that Mother returned with Child to the family home after Mother and Child were abused by Stephen Ash (Father). Both parents appeared at the adjudicatory hearing and consented to adjudication. Each was given an Individualized Service Plan (ISP) which required a Substance Abuse Subtle Screening Inventory (SASSI) test, completion of all recommendations arising therefrom, and counseling. In March 2008, the State of Oklahoma (State) filed a motion to terminate both parents' parental rights, pursuant to 10 O.S. Supp. 2008 § 7006-1.1. State alleged that Mother had failed to correct the conditions leading to Child's deprived adjudication after being given more than 90 days to do so, and that Father had abandoned and failed to support Child.
¶ 3 State's motion to terminate parental rights was set for hearing, and notice was issued to both parents at a rural box number. However, the county sheriff was unable to make personal service on either parent and returned the summons "not found." Service was then made upon each parent's attorney.
¶ 4 The attorneys appeared for the termination hearing, but the parents did not. Neither attorney could explain the clients' absences. Mother's attorney stated that he had been in the case for a couple of months, had last spoken to his client shortly before a March 11, 2008, hearing, and had been unable to locate her. He stated that Mother had recently been evicted from her home and she did not answer her cell phone, opining that it either did not work or its voice-mail was full. Although Mother's attorney asked for a "short continuance," he did not object to service of process.
¶ 5 The trial court noted that both parents had a history of failing to appear for evaluations, counseling sessions, and visits with Child, that they had unduly delayed the case by their dilatory behavior, and that "all the sources that they have given you to get a hold of them have failed for two years or close to it." The court also stated:
I think that there's plenty of notice. I think if those people were trying at all and were making themselves accessible at all to even their attorneys that they'd be here today. . . .
The trial court denied Mother's motion for continuance and ordered the termination hearing to proceed.
¶ 6 State's only witness was the parents' DHS caseworker. The caseworker testified that both parents had failed to correct the conditions leading to Child's deprived adjudication. The caseworker stated that Mother had failed to complete a substance abuse plan's recommendations, had failed to attend counseling sessions, had failed to show up for a drug test, and had failed to show up for 13 scheduled visits with Child. The caseworker also testified that some home services had been suspended because Father had threatened a caseworker, and although Mother once left Father due to his violence and drug dealing, she moved back in with him. The caseworker opined that it was "absolutely" in Child's best interests that parental rights be terminated because "[t]he parents continue to show lack of concern. They don't call. They don't even call to ask how [Child is] doing, much less come for visits. They have failed to correct the conditions of removal. They continue to use drugs, and it's just not a good safe nurturing home for a child."
¶ 7 Parents' attorneys did not present any evidence, but did cross-examine the witness. Mother's attorney conceded his client had failed to correct some of the conditions listed in the ISP, but argued she had substantially complied with other conditions. He asserted that part of Mother's problem was that she had previously been severely burned and disfigured, and that she was taking a great deal of medication.
¶ 8 At the conclusion of the trial, the court terminated both parents' parental rights. Mother now appeals.[2]

STANDARD OF REVIEW
¶ 9 The trial court's decision terminating parental rights will be affirmed if it is supported by clear and convincing evidence. In re S.B.C., 2002 OK 83, 64 P.3d 1080.

ANALYSIS
¶ 10 In her first proposition of error, Mother asserts the trial court's decision was not supported by clear and convincing evidence. First, she argues the trial court erred in not giving her more time to correct the conditions leading to the deprived adjudication, because Child was in a "kinship placement" with an aunt and uncle and was, therefore, in no danger. In support of her position, Mother cites 10 O.S. Supp. 2008 § 7003-4.7(B)(1), which provides that the State is not required to file a petition for termination if "[a]t the option of the Department of Human Services or by order of the court, the child is properly being cared for by a relative."
¶ 11 Here, DHS did not exercise such an option and the trial court did not issue such an order. Absent other evidence, we find no abuse of discretion in the trial court's failure to enter such an order. Although Mother now argues that Child was in no danger because Child was in a relative's home, Mother presented absolutely no evidence of this beyond a statement by her attorney. Even if Mother had presented evidence, however, the mere fact that things are getting no worse for a child in relative placement ignores the importance of permanency in a child's life, a factor repeatedly stressed in Oklahoma statutes.
¶ 12 Mother also asserts the trial court erred by not adequately considering her special circumstances, namely a lack of money and an inability to travel. Although Mother cites In re K.C., 2002 OK CIV APP 58, 46 P.3d 1289, the case does not support her argument. In re K.C. held that the relevant statutes, § 7006 1.1(A)(5) and § 7003-5.5(1), do not give parents a maximum amount of time to correct conditions; they simply establish a minimum amount of time that parents must be given to do so. Unlike the parent in K.C., however, Mother not only failed to correct the conditions which led to Child's deprived adjudication in a reasonable time period, but she made little effort to do so.
¶ 13 Mother also asserts she is being unfairly punished because DHS stopped providing Comprehensive Home-Based Services due to Father's threats against a DHS worker. We disagree. Mother willingly chose to stay in the home knowing that services would not be provided.
¶ 14 For all these reasons, Mother's first proposition of error fails.
¶ 15 In her second proposition of error, Mother asserts that service of notice failed to meet the requirements of 10 O.S. Supp. 2008 § 7006-1.2(A) because Mother was not personally served.
¶ 16 In its appellate brief, State agrees with this proposition and joins in Mother's request for a reversal. However, we are not automatically required to reverse a trial court merely because both parties contest its decision on appeal. Rather, we must canvass the record and determine whether reversible error has been committed. Error is never presumed. Matter of J.B.,1982 OK 40, ¶ 5, 643 P.2d 306, 308.
¶ 17 In this case, we find no statutory requirement for personal service. Section 7006-1.2(A)(1) provides that notice of the hearing and copy of the termination petition be served upon a parent "in the same manner as summons is served in civil cases." Title 12 O.S. Supp. 2008 § 2005.2(D) provides that "[s]ervice of notice to the address of record of counsel or an unrepresented party shall be considered valid service for all purposes, including dismissal of cases for failure to appear." (Emphasis added). Indisputably, Mother's counsel was served, appeared, and actually participated in the trial. Thus, the service met the requirements of the statute.
¶ 18 Mother has not alleged, either at trial or on appeal, that such service violated due process. Therefore, we are not required to consider the constitutional sufficiency of the service given in this particular case. See Matter of C.C., 1995 OK CIV APP 127, ¶ 16, 907 P.2d 241, 244-45. We merely note that, as a general proposition, service of a termination petition upon a parent's current attorney meets the minimum requirements of due process.[3]

CONCLUSION
¶ 19 Accordingly, the trial court's decision is affirmed.
¶ 20 AFFIRMED.
BARNES, J., concurs, and RAPP, C.J., dissents.
NOTES
[1] None of the pleadings, transcripts of hearings, or orders filed or entered prior to the motion to terminate parental rights were included in the appellate record.
[2] Although Father's parental rights were also terminated, he is not a party to this appeal.
[3] The Oklahoma Supreme Court has held that service upon an attorney of record when a cause is pending creates a reasonable presumption that such notice will reach the client and is sufficient to satisfy the requirements of due process. Daniels v. Daniels, 1981 OK 79, ¶ 5, 634 P.2d 709, 710. See also Mara M. v. Ariz. Dept. of Economic Security, 38 P.3d 41 (Ariz. Ct. App. 2002) (involving a similar statute and identical facts). In Steincamp v. Steincamp, 1979 OK 51, 593 P.2d 495, the Oklahoma Supreme Court found service of a contempt citation upon a party's former attorney insufficient because the notice was served six years after termination of the attorney-client relationship and there was no evidence that they had discussed the matter during that period. Steincamp is distinguishable for several reasons, including the fact that Mother's attorney was actively involved in representing her in the juvenile action and had consulted with her during the preceding two months.