NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LISA H., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, [1] M.H., J.H., D.H., V.H., *Appellees.*

No. 1 CA-JV 13-0325
FILED 09-04-2014

Appeal from the Superior Court in Maricopa County
No. JS12349
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

---

[1] Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety is substituted for the Arizona Department of Economic Security in this matter. *See* ARCAP 27.

---

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Margaret H. Downie joined.

---

**P O R T L E Y**, Judge:

**¶1**        Lisa H. "(Mother")" challenges the order terminating her parental relationship to four of her children, M.H., J.H., D.H., and V.H., based on fifteen months in out-of-home placement.  Because we find no abuse of discretion, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        This case started out as an in-home dependency with services in March 2010.  Mother submitted the issue of whether the children were dependent to the juvenile court after a mediation session, and the children were found dependent.  After the maternal grandmother then physically abused M.H., the children were removed from Mother's physical care and placed in a foster home in August 2010, and the court subsequently approved the out-of-home placement.

**¶3**        The Department of Child Safety ("Department") provided a variety of services to attempt to reunify the family.  During a July 2011 hearing, the court modified the case plan to add a concurrent plan of severance and adoption.  The court changed the case plan to severance and adoption in October 2011, and the Department subsequently filed a motion to terminate Mother's rights to the four children.  At the contested severance trial in May 2012, the court denied the Department's motion to terminate Mother's parental rights based on fifteen months in out-of-home placement because the court was unable to conclude that the Department had provided Mother with "sufficient time and opportunity to participate in reunification services under the circumstances of this case."[2]  Because the children were still dependent, the court ordered the Department to continue offering services to Mother.

---

[2] The court, however, terminated the parental rights of any father of the four children in its May 2012 ruling.

¶4        The Department continued to provide services. The Department, however, was sanctioned by the juvenile court for discontinuing some services that had been provided before the severance trial. Specifically, the court ordered the Department to restore services to Mother and the children that were in place in October 2011, and to ensure visitation with Mother and between the children. Subsequently, the court denied the Department's February 2013 request to change the case plan to severance and adoption, continuing with concurrent plans of reunification, and severance and adoption.

¶5        Although the Department continued to provide services, it also filed a petition in February 2013 to terminate Mother's parental rights to the four children. Prior to the severance hearing, the court held an evidentiary hearing and suspended visits between the children and Mother pending the severance trial. The court conducted the termination trial in October 2013, and entered its findings of fact and conclusions of law and terminated Mother's parental rights to the four children in December 2013.

## DISCUSSION

¶6        Mother challenges the juvenile court's determination that the Department provided reasonable services to attempt to reunify the family given her low intellectual functioning. She also challenges the court's determination that the evidence supported termination based on fifteen months in out-of-home placement.[3]

¶7        To justify the termination of Mother's parental rights, the court had to find that the Department proved by clear and convincing evidence that the children were in an out-of-home placement for fifteen months or longer, Mother had been unable to remedy the circumstances that caused the children to be removed "and there is a substantial likelihood that [she] will not be capable of exercising proper and effective parental care and control in the near future." Ariz. Rev. Stat. ("A.R.S.") section 8-533 (B)(8)(c);[4] *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000). On review, we accept the juvenile court's "findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz.*

---

[3] The court also was required to find, and did find, that termination was in the best interests of the child by a preponderance of the evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41, 110 P.3d 1013, 1022 (2005). Because Mother does not challenge the best interest finding, we need not address the finding.

[4] We cite the current version of the statute unless otherwise noted.

*Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002) (citation omitted).

**¶8**        In *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, we noted that when children are removed, the Department "is presumptively obligated to make reasonable efforts to provide services to the child[ren] and the . . . parent." 234 Ariz. 174, 177, ¶ 12, 319 P.3d 236, 239 (App. 2014) (internal quotations and citation omitted).  In fact, "[w]hen a dependency case plan includes family reunification, [the Department] is obligated to provide services reasonably geared toward family reunification" and when the Department "seeks severance based on length of time in care, [the Department} must prove that it has made a diligent effort to provide appropriate reunification services." *Id.* (citations omitted).

**¶9**        The juvenile court, however, had to determine whether the Department met its burden.  The court is in the best position to evaluate the effectiveness and impact of the services provided because credibility determinations may be required to weigh the evidence presented.  *See Jesus M.*, 203 Ariz. at 282, ¶ 12, 53 P.3d at 207.  In fact, the court is required to be active throughout the dependency process to ensure that all parties not only receive notice of the periodic hearings and various reports, but also receive meaningful opportunities for input and objection at the hearings.  *Shawanee S.*, 234 Ariz. at 178, ¶ 15, 319 P.3d at 240; *see generally* National Council of Juvenile and Family Court Judges, *Resource Guidelines: Improving Court Practice in Child Abuse & Neglect Cases* 15 (1995) ("The juvenile court . . . judge is required to remain actively involved over a period of time in child welfare litigation.  The judge does not simply make a one-time decision . . . but rather makes a series of decisions over time.").  And, it is at those hearings, including the termination trial, when a parent dissatisfied with the services actually being provided needs to raise the issue with the court.  *Shawanee S.*, 234 Ariz. at 178, ¶ 14, 319 P.3d at 240.

**¶10**        Mother first contends that she had resolved the issues that resulted in the dependency, but the Department developed a "whole new list of concerns" that did not relate to the reasons the children were removed.  However, in *Marina P. v. Ariz. Dep't of Econ. Sec.*, we stated that the "circumstances which cause the child to be in an out-of-home placement" included "those circumstances existing at the time of the severance that prevent a parent from being able to appropriately provide for his or her children."  214 Ariz. 326, 330, ¶ 22, 152 P.3d 1209, 1213 (App. 2007) (internal quotes omitted).  The proposition remains good law.

¶11      Moreover, since the passage of state legislation to conform to the federal policy in the Adoption and Safe Families Act of 1997, Pub. L. No. 105-89, 111 Stat. 2115 (1997), *see Veronica T. v. Ariz. Dep't of Econ. Sec.*, 212 Ariz. 7, 9-10, ¶ 15, 126 P.3d 154, 156-57 (App. 2005); *Toni W. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 61, 64, ¶ 9, 993 P.2d 462, 465 (App. 1999), the focus of the child welfare policy after the filing of a dependency has been to expedite finding a permanent placement for dependent children. *Kenneth T. v. Ariz. Dep't of Econ. Sec.*, 212 Ariz. 150, 152, ¶ 12, 128 P.3d 773, 775 (App 2006). Consequently, we, like the juvenile court, look beyond the initial reason for removal to determine whether the court abused its discretion by concluding that the Department had made reasonable efforts to reunify the family.

¶12      The record supports the juvenile court's conclusion that the Department made diligent efforts to provide appropriate reunification services. Between the removal of the children in October 2010 and the first termination hearing in May 2012, Mother was provided myriad services (case management assistance, child and family team meetings, psychological evaluation and assessments, parent-aide services, parent education services, individual counseling, visits with the children and services for the children) and had made some progress — she had stable housing and a stable job. She, however, had not learned to manage her children appropriately. In fact, despite additional services to Mother and the children prior to the October 2013 termination trial, Mother did not demonstrate that she had learned to manage the children and their special needs. Instead, as the psychologist, Dr. James S. Thal, noted, she was only able to marginally function on her own and was not capable of independently caring for the four younger children. And, just prior to the 2013 termination trial, following an evidentiary hearing, the court suspended visits between Mother and the children because "continued visits will . . . be harmful to the children."

¶13      Moreover, the Department tried to accommodate Mother's intellectual abilities. Mother admitted that "I can't say that [the Department] haven't helped me." In fact, Mother had many parent-aides over the life of the case, and some read everything to her to attempt to help her understand parenting information. Although Mother appeared to understand the information, she did not consistently demonstrate that she had learned the related skills. In fact, the parent-aide who met with Mother beginning in February 2103 testified at the evidentiary hearing that led to visits being discontinued that Mother had missed nearly half of their one-on-one sessions, she appeared to be learning at the sessions she attended, but she did not consistently apply the information.

¶14 Mother testified at trial that she learned information from the parent-aide sessions, but the materials were hard to understand and did not seem to help her to discipline her children. She also testified that she had attended counseling sessions but did not believe the sessions would help her to become a better parent.

¶15 Despite the myriad services the Department provided to Mother during the three years the children had been out of her care, she contends that the services were not tailored to meet her intellectual abilities. We disagree.

¶16 The Department does need not provide every conceivable service but must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the children. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 37, 971 P.2d 1046, 1053 (App. 1999). There is little doubt that the Department provided reasonable services designed to help Mother improve her parenting skills and more than sufficient time without much success. Although she claimed at the June 2013 hearing that the services had to be tailored to meet her needs, she never identified what should have been done differently or needed to be done from that time onward. Consequently, the juvenile court did not abuse its discretion by finding that the Department had provided reasonable services during the time the children were in out-of-home placement.

¶17 Mother also contends that the evidence does not support the termination of her parental rights to the four children. Again, the record indicates otherwise.

¶18 Mother does not challenge the fact that the children had been out of her care since October 2010. Moreover, the juvenile court properly concluded that the Department provided reasonable services designed to reunify the family. In fact, the court had the report of Dr. Thal who opined that Mother would not be able to learn to be an effective parent in the foreseeable future because she could not make the necessary and meaningful changes to ensure that the children would not be at risk. His opinion and the other evidence satisfy the statutory requirement that the court has to find that there is a substantial likelihood that Mother will not be capable of exercising proper and effective parental care and control in the near future. Consequently, the evidentiary record supports the court's findings that the Department met its burden of proof to demonstrate that

there was a statutory basis for the termination of parental rights. As a result, we find no abuse of discretion.[5]

**CONCLUSION**

**¶19**        We affirm the termination of Mother's parental rights to M.H., J.H., D.H., and V.H.



Ruth A. Willingham · Clerk of the Court
FILED: gsh

---

[5] In her reply brief, Mother urges us to follow *State ex rel. Dep't of Human Ser. v. Smith*, 106 P.3d 627 (Ore. 2005). We decline the invitation given the record in this case, the governing statutory and case law, and our standard of review.