IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

LISA K.,                              )
                                      )
                    Appellant,        )      2 CA-JV 2012-0007
                                      )      DEPARTMENT B
        v.                            )
                                      )      O P I N I O N
ARIZONA DEPARTMENT OF ECONOMIC )
SECURITY and JULIAN N.,               )
                                      )
                    Appellees.        )
                                      )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. J192710

Honorable Gus Aragón, Judge

AFFIRMED

Sanders & Sanders, P.C.
  By Ken Sanders                                              Tucson
                                              Attorneys for Appellant

Thomas C. Horne, Arizona Attorney General
  By Claudia Acosta Collings                                 Tucson
                                         Attorneys for Appellee Arizona
                                      Department of Economic Security

V Á S Q U E Z, Presiding Judge.

**¶1**    Lisa K. appeals from the juvenile court's order terminating her parental rights to her son, Julian N., born in July 2009, based on mental illness or chronic substance abuse and the length of time in court-ordered care.[1]  *See* A.R.S. § 8-533(B)(3), (B)(8)(c).  The sole claim Lisa raises on appeal is that A.R.S. § 8-862 is unconstitutional and resulted in a violation of her due process rights, requiring us to vacate the termination order.[2]  For the reasons set forth below, we affirm.

---

[1]Julian's father, whose rights also were terminated, is not a party to this appeal.

[2]The relevant portions of § 8-862, the statute that governs permanency hearings, provide:

> B.  At the permanency hearing, the court shall determine:
>
> 1.  Whether termination of parental rights, adoption, permanent guardianship . . . or some other permanent legal status is the most appropriate plan for the child and shall order the plan to be accomplished within a specified period of time.
>
> . . . .
>
> D.  If the court determines that the termination of parental rights is clearly in the best interests of the child, the court shall:
>
> 1.  Order the department . . . to file within ten days after the permanency hearing a motion alleging one or more of the grounds prescribed in § 8-533 for termination of parental rights.  The party who files the motion has the burden of presenting evidence at the termination hearing to prove the allegations in the motion.
>
> 2.  Set a date for an initial hearing on the motion for termination of parental rights within thirty days after the permanency hearing.  If the termination is contested at the

¶2         A juvenile court may terminate a parent's rights if it finds by clear and convincing evidence that any statutory ground for severance exists and if it finds by a preponderance of the evidence that severance is in the child's best interests. A.R.S. §§ 8-533(B), 8-537(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, ¶ 41, 110 P.3d 1013, 1022 (2005). "On review, . . . we will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, ¶ 4, 53 P.3d 203, 205 (App. 2002). And, we view the evidence in the light most favorable to upholding the court's ruling. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, ¶ 20, 995 P.2d 682, 686 (2000).

## Background

¶3         The relevant facts are essentially undisputed and, together with the procedural history of this case, are as follows. Based on reports of domestic violence between Lisa and Julian's father and a subsequent investigation, the Arizona Department of Economic Security (ADES) removed Julian from Lisa's care in November 2009, when he was four months old. After Lisa admitted the allegations in the dependency petition, the juvenile court adjudicated Julian dependent in February 2010 and approved a case-plan goal of family reunification. The court held a combined permanency hearing and dependency review hearing in November 2010, at which it gave Lisa three more months to comply with the case plan and achieve reunification with Julian. After the continued

initial hearing, the court shall set a date for the trial on termination of parental rights within ninety days after the permanency hearing.

3

permanency hearing in February 2011, the court found Lisa had been "substantially compliant" with the case-plan goals, but she nevertheless had "failed to benefit from the case plan services provided thus far to the extent that the Court would have hoped and expected" and remained either unable or unwilling to adequately parent Julian. Although ADES recommended changing the case-plan goal to severance and adoption, the court also found appropriate a concurrent goal of family reunification.

¶4　　In April 2011, Lisa filed a motion pursuant to Rule 58(D), Ariz. R. P. Juv. Ct., in which she opposed the changed case-plan goal and requested an evidentiary hearing on that issue. At a combined hearing on the motion and dependency review on May 3, ADES did not oppose Lisa's motion, and the juvenile court granted it, setting an evidentiary hearing commencing on May 23. In July, following three days of hearings, the court determined it clearly was in Julian's best interests to change the case-plan goal to severance and adoption. In accordance with § 8-862(D)(1),[3] the court directed ADES to file a motion to terminate Lisa's parental rights to Julian within ten days. In its motion to terminate, filed on July 28, 2011, ADES alleged as grounds for termination mental illness or substance abuse and length of time in court-ordered out-of-home care. *See* § 8-533(B)(3), (B)(8)(c). ADES also alleged that terminating Lisa's parental rights was in Julian's best interests.

¶5　　In August 2011, Lisa filed a special action petition in which she asked this court to find § 8-862 unconstitutional insofar as it permits the same judge who finds the

---

[3]Section 8-862(D)(1) states that if the juvenile court determines termination "is clearly in the best interests of the child," it shall order ADES to file a motion to terminate.

4

case-plan goal of severance and adoption in a child's best interests and directs ADES to file a motion to terminate a parent's rights, to then preside over the termination hearing. We declined to accept special action jurisdiction on September 15, 2011. Lisa subsequently filed a "Motion to Declare A.R.S. § 8-862 Unconstitutional" in the juvenile court, which the court denied, finding the statute constitutional "as applied to the mother in this case." Lisa then filed a second special action petition in this court, challenging the constitutionality of § 8-862. We declined to accept jurisdiction.

¶6 On November 1, 2011, Lisa filed a notice in the juvenile court, stating she had filed a civil rights complaint in the United States District Court for the District of Arizona. On the first day of the contested severance hearing, Judge Gus Aragón, the judge assigned to this case, informed the parties that although a federal action had been filed in the matter naming him personally as a defendant, he saw no reason to recuse himself. Judge Aragón then asked if "anybody need[ed] to make further record on that." Lisa's attorney responded that he had filed the federal lawsuit, which was "no different than the special actions that [had] been filed previously [in this matter]" and added that he did not "see any reason to ask [the] Court to recuse itself from the action."[4] Judge Aragón therefore proceeded with the severance hearing. After four days of hearings between November 2011 and January 2012, the judge granted ADES's motion and terminated Lisa's parental rights to Julian.

_____

[4]Although Lisa did not object to Judge Aragón's presiding over the case, or file a motion for change of judge, *see* Rule 2, Ariz. R. P. Juv. Ct., we nonetheless conclude she had preserved the issue before us on appeal by filing special actions in this court and a motion challenging the statute's constitutionality in the juvenile court.

**Standing**

¶7 On appeal, Lisa argues § 8-862 is facially unconstitutional in that it permits the same judge who orders ADES to file the motion to terminate a parent's rights to also preside over the severance hearing. Although ADES argued in its answering brief that Lisa has no standing to challenge the constitutionality of § 8-862, it conceded the issue at oral argument. We likewise conclude Lisa has standing. *See Church v. Rawson Drug & Sundry Co.*, 173 Ariz. 342, 349, 842 P.2d 1355, 1362 (App. 1992) (initial question in constitutional challenge to statute whether party has standing to assert claim); *see also State v. Herrera*, 121 Ariz. 12, 15, 588 P.2d 305, 308 (1978) ("In order to possess standing to assert a constitutional challenge, an individual must himself have suffered some threatened or actual injury . . . .") (citation omitted). However, the challenge to the facial constitutionality of a statute requires only "an inquiry into whether the law itself is unconstitutional, [and] not into whether the application of the law violates a particular individual's rights." *Hernandez v. Lynch*, 216 Ariz. 469, ¶ 8, 167 P.3d 1264, 1267 (App. 2007). Because Lisa has argued that her due process rights to an impartial tribunal were violated by operation of § 8-862, and that the statute has no valid application for those similarly situated, she has standing to assert this claim without proof of an actual bias on the part of the particular juvenile court judge.

**Is § 8-862 Facially Unconstitutional?**

¶8 Lisa contends § 8-862 is facially unconstitutional because it permits the same judge who directed ADES to file the motion to terminate a parent's rights to preside over the hearing on that motion and decide whether to grant it. She argues the statute

6

thereby violates a parent's right to have the case heard and decided by an impartial fact-finder, resulting in a violation of the parent's due process rights. Lisa asserts there are no circumstances in which application of § 8-862(D) as written would be valid. Arizona generally follows the standard set forth in *United States v. Salerno*, 481 U.S. 739, 745 (1987), which provides that to successfully challenge the facial validity of a statute, the challenging party must demonstrate no circumstances exist under which the challenged statute would be found valid. *See Hernandez*, 216 Ariz. 469, ¶ 8, 167 P.3d at 1267. "If we find that there is no set of circumstances under which the statute can be found constitutional, then it must be found unconstitutional." *State v. Seyrafi*, 201 Ariz. 147, n.4, 32 P.3d 430, 432 n.4 (App. 2001).

¶9        "We review alleged constitutional violations de novo, . . . and when possible, construe statutes to uphold their constitutionality." *State v. Hargrave*, 225 Ariz. 1, ¶ 42, 234 P.3d 569, 581 (2010) (citations omitted). "We presume a statute to be constitutional and will not declare an act of the legislature unconstitutional unless convinced beyond a reasonable doubt that it conflicts with the federal or state constitutions." *Graville v. Dodge*, 195 Ariz. 119, ¶ 17, 985 P.2d 604, 608 (App. 1999). The burden of establishing that a statute is unconstitutional is on the person challenging the statute. *In re Maricopa Cnty. Juv. Action No. JT9065297*, 181 Ariz. 69, 81, 887 P.2d 599, 611 (App. 1994). We review issues of statutory interpretation de novo. *See State v. Barnett*, 209 Ariz. 352, ¶ 7, 101 P.3d 646, 648 (App. 2004). "If a statute's language is clear and unambiguous, courts must give effect to that language and need not employ the rules of statutory construction." *Seyrafi*, 201 Ariz. 147, ¶ 11, 32 P.3d at 433.

¶10        "The touchstone of due process under both the Arizona and federal constitutions is fundamental fairness," *State v. Melendez*, 172 Ariz. 68, 71, 834 P.2d 154, 157 (1992), whereas "[p]rocedural due process guarantees that permissible governmental interference is fairly achieved." *Simpson v. Owens*, 207 Ariz. 261, ¶ 17, 85 P.3d 478, 484 (App. 2004). And, "a parent indeed does have a fundamental interest in the care, custody and control of her child, a right that is protected by the Due Process Clause of the United States Constitution." *Mara M. v. Ariz. Dep't of Econ. Sec.*, 201 Ariz. 503, ¶ 24, 38 P.3d 41, 45 (App. 2002), *citing Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (citation omitted). "[W]hen the State acts to terminate this right, it must provide appropriate fair procedures." *Mara M.*, 201 Ariz. 503, ¶ 24, 38 P.3d at 45. In addition, all litigants are entitled to a decision rendered by an impartial tribunal. *See Pavlik v. Chinle Unified Sch. Dist. No. 24*, 195 Ariz. 148, ¶ 12, 985 P.2d 633, 637 (App. 1999).

¶11        Although Lisa asserts a facial challenge to § 8-862, claiming there are no circumstances under which it can be applied constitutionally, she has not cited any facts specific to her case supporting her apparent claim that the juvenile court acted with the bias she contends is inevitable under the statutory scheme. And, in the final paragraphs of her opening brief, she asserts without factual support that she has suffered fundamental, "prejudicial" error. "The question whether error is fundamental is 'fact intensive.'" *Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, ¶ 25, 118 P.3d 37, 42 (App. 2005), *quoting State v. Bible*, 175 Ariz. 549, 572, 858 P.2d 1152, 1175 (1993); *see also State v. Moody*, 208 Ariz. 424, n.9, 94 P.3d 1119, 1147 n.9 (2004) ("'[O]pening briefs must present significant arguments, supported by authority, setting forth an

8

appellant's position on the issues raised. Failure to argue a claim usually constitutes abandonment and waiver of that claim.'"), *quoting State v. Carver*, 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989). Moreover, no such bias or prejudice is apparent from the record before us. Lisa nonetheless asserts that, once the juvenile court ordered ADES to file a motion for termination pursuant to § 8-862(D)(1), "it would be na[ï]ve to believe that the Juvenile Court could or would fairly and impartially determine whether legal grounds existed to support its determination." Thus, she seems to be suggesting the court presumptively is biased in such circumstances. She further asserts that, "[e]ven assuming that the Juvenile Court could be as impartial as due process requires, the appearance of partiality is too great to give the process appropriate legitimacy."

¶12        The legislature enacted § 8-862 in 1997 to comply with the requirements of the Federal Adoption and Safe Families Act, which include an "accelerate[d] process by which parental rights are terminated so that children can be adopted more readily and at an earlier age."[5] *Mara M.*, 201 Ariz. 503, ¶¶ 16-17, 38 P.3d at 43-44; 1997 Ariz. Sess. Laws, ch. 222, § 52; *see also Rita J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 512, ¶ 5, 1 P.3d 155, 156-57 (App. 2000) (§ 8-862 adopted to comply with federal law to enable timely permanency proceedings). As part of that process, the statute requires the juvenile court to "hold a permanency hearing to determine the future permanent legal status of the

---

[5]We decline to address Lisa's argument that ADES has taken the position "that parents' due process rights be subjugated to expediency . . . [and] implicitly concedes, therefore, that A.R.S. § 8-862 is not intended to protect the due process rights of parents." The record does not support this characterization of ADES's argument. Nor does the statute suggest timely permanency proceedings and affording parents the full due process to which they are entitled are incompatible goals.

child" within a specific time period at which the court shall determine "the most appropriate plan for the child." § 8-862(A), (B)(1).

¶13    Although Lisa argues the statute is facially unconstitutional because there are no circumstances under which it can be applied constitutionally, the facts in her case persuade us otherwise. Here, the juvenile court conducted several permanency hearings and waited until Julian had been out of the family home for almost two years before it changed the case-plan goal to severance and adoption and ordered ADES to file a motion to terminate. At that point, the court had done nothing more than determine that termination was in Julian's best interests, not that termination would occur. ADES, not the court, then was required to decide which grounds to allege in the motion. *See* § 8-862(D)(1). And ADES, not the court, then was required to prove by clear and convincing evidence the grounds it alleged in its motion for terminating Lisa's rights. *See* §§ 8-537(B), 8-862(D)(1). And, only after hearing the evidence presented at a full severance hearing did the court determine ADES had sustained its burden of proving the grounds for severance it had alleged in its motion. Similarly, only after hearing the evidence presented, did the court determine ADES had proved by a preponderance of the evidence that severance was in Julian's best interests. *See Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, ¶ 19, 83 P.3d 43, 50 (App. 2004). Finally, the court was required to articulate in writing its decision and "the findings on which the order is based," *see* A.R.S. § 8-538(A), which further assured the court's findings were supported by the evidence presented.

¶14 We are not persuaded that the juvenile court generally, or in this case specifically, was incapable of assessing the evidence and applying the appropriate burdens of proof—both as to the grounds for severance and Julian's best interests—at the termination hearing. Lisa argues, "[i]t is not enough to simply fall back on the established presumption that judges preside with honesty and integrity." *See State v. Warner*, 159 Ariz. 46, 52, 764 P.2d 1105, 1111 (1988) (trial court presumed to know and apply rules of evidence and burden of proof), *citing State v. Haad*, 127 Ariz. 270, 275, 619 P.2d 1047, 1052 (App. 1980); *Emmett McLoughlin Realty, Inc. v. Pima Cnty.*, 212 Ariz. 351, ¶ 24, 132 P.3d 290, 296 (App. 2006) (judges entitled to presumption of "'honesty and integrity'"), *quoting Pavlik*, 195 Ariz. 148, ¶ 24, 985 P.2d at 639. However, the entire statutory process, as outlined above, provides adequate procedural protections and safeguards to assure that a parent is not denied the impartial tribunal to which she is entitled, and that ADES's burden of proof is not rendered "meaningless," as Lisa asserts.

¶15 Nor is Arizona the only state that requires or permits the juvenile court to order that a motion to terminate be filed.[6] And courts addressing this procedure have

---

[6]Like Arizona, Washington and Iowa require the court to order the department to file a motion to terminate parental rights under certain circumstances, *see* Wash. Rev. Code Ann. § 13.34.145(3) (at permanency planning hearing court "shall order the department . . . to file a petition seeking termination of parental rights if . . . ."); Iowa Code Ann. § 232.58(3)(c) (after permanency hearing, court shall "[d]irect the county attorney . . . to institute proceedings to terminate the parent-child relationship"). In addition, at least three other states, Arkansas, Montana, and Missouri, permit the court to order the department to effectuate a permanency plan of adoption. *See* Ark. Code Ann. § 9-27-338(f) (after court determines adoption appropriate, "department shall file the petition to terminate parental rights"); Mont. Code Ann. § 41-3-445(6)(c), 7, 8(c) ("court

11

upheld its constitutionality, whether in the form of an "order," "directive," "recommendation," or pursuant to a court's inherent authority. *See, e.g.*, *In re D.A.*, 189 P.3d 631, ¶¶ 15, 34-37 (Mont. 2008) (by ordering Department of Public Health and Human Services to "take steps . . . to permanently place the children," and later presiding over termination hearing, court did not violate Montana statute or parents' due process right to fair hearing); *In re K.C.*, 660 N.W.2d 29, 35-36 (Iowa 2003) (statute authorizing juvenile court to order county attorney to initiate termination proceedings not unconstitutional), *citing In re J.R.T.*, 427 So. 2d 251 (Fla. Dist. Ct. App. 1983), *In re D.S.*, 198 Ill. 2d 309 (2001), *In re D.G.C.*, 690 So. 2d 237 (La. 1997), *In re G.S.*, 731 S.W.2d 525 (Mo. Ct. App. 1987). *See also Carter v. Knox Cnty. Office of Family & Children*, 761 N.E.2d 431, 436 (Ind. Ct. App. 2001) (judge's approval of permanency plan recommending termination did not demonstrate judge, who also presided over termination hearing, had failed to retain his "impartiality and objectivity"); *In re LaRue*, 440 S.E.2d 301, 303 (N.C. Ct. App. 1994) (recusal not required on grounds of personal bias or prejudice after court recommends department of social services pursue termination of parental rights).

¶16 Importantly, a juvenile court's orders entered after a permanency hearing are not final and appealable, specifically because they "contemplate further proceedings that will determine the ultimate outcome of the case," which remains uncertain until the

---

may enter any other order that it determines to be in the best interests of the child," including an order directing department to take required steps to effectuate adoption); Mo. Rev. Stat. § 211.447(1) (juvenile judge "may order the juvenile officer to . . . file[] a petition" to terminate parental rights).

proceedings have concluded. *Rita J.*, 196 Ariz. 512, ¶ 8, 1 P.3d at 158. And, as § 8-862

contemplates, the severance hearing is such a "further proceeding." Although § 8-862

does not expressly require that the same judge preside over the dependency and

termination proceeding, if we were to prohibit the same judge from conducting all

proceedings related to a single family, as Lisa seems to suggest, the inevitable delays

resulting from the transition from one judge to another would "undermine the primary

purpose of . . . [§] 8-862: expediting the process of finding permanent placement for

children." *Rita J.*, 196 Ariz. 512, ¶ 10, 1 P.3d at 158; *see, e.g.*, *In re S.M.H.*, 160 S.W.3d

355, 359, 361, 363 (Mo. 2005) (request to change judge untimely and not in spirit of

Missouri's "one-family/one-judge" unified family court system even though same judge

who ordered department to file petition to terminate also conducted termination hearing);

*see also, e.g.*, *In re M.L.*, 965 P.2d 551, 556-57 (Utah Ct. App. 1998) (because statutory

scheme allows same judge to preside over all juvenile protection proceedings, allegation

of judicial bias must be based on more than concern same judge presided over prior

proceedings with family).

¶17            We find instructive the reasoning of the Superior Court of Pennsylvania in

*In re Quick*, 559 A.2d 42, 46-47 (Pa. Super. Ct. 1989):[7]

> We fail to see how being party to a dispositional hearing in
> which removal from the parents' custody was required by
> clear necessity would prejudice the parent some years later,

---

[7]The model set forth in *Quick* mirrors the "one-family, one-judge" standard
established in the Pima County Model Court Project to prevent cases involving children
from moving from judge to judge. *See* Stephanie Innes, *Pima Judge Lands National
Honor for Juvenile Court Work*, Tucson Citizen, June 3, 1999; *see also* Paul A. Williams,
*A Unified Family Court for Missouri*, 63 UMKC L. Rev. 383, 384 (Spring 1995).

13

when the evidence in a termination proceeding establishes the conditions requiring removal have substantially been uncorrected . . . . The consistent thread, over many years flowing through the management of family cases, has been that so far as possible the judge who initially heard the family matter should remain with it to its conclusion. Indeed, one of the most disruptive and disconcerting factors in multi-judge jurisdictions is the fragmentation of different aspects of a family case resulting from the hearing by several judges of different stages of a particular proceeding . . . . Unless it was unavoidable, it would be self-defeating for the judge assigned to the termination case to be a different judge than the one who heard the dependency case. The argument by appellant that a de novo hearing was necessary, so that bias emanating from prior hearings on dependency would not infect the termination proceedings, is unmerited unless it can be established that bias actually existed in fact . . . . A new judge will not have the benefit of recall of hearings, reports and directions not fully detailed in the cold or abbreviated reports and records presented at the termination proceeding. That is not to say these recollections will be the basis for the termination decision, which must stand on its own evidence and be established by clear and convincing evidence.

¶18 We also disagree with Lisa that permitting the juvenile court to both direct the filing of the motion pursuant to § 8-862 and to hear and decide it is the equivalent of permitting a judge to order a criminal prosecution and preside over the criminal trial, essentially permitting the judge to act as both prosecutor and trier of fact. There is no support for Lisa's assertion that, once the court determines termination is in the best interests of the child and directs ADES to file the motion to terminate, the court "wants to see a particular outcome." To the contrary, as noted above, there are many procedural protections to ensure termination is not a foregone conclusion once the court orders ADES to file a motion to terminate. We find instructive the Supreme Court's reasoning in *Withrow v. Larkin*, 421 U.S. 35, 57-58 (1975): "[J]ust as there is no logical

14

inconsistency between a finding of probable cause and an acquittal in a criminal proceeding," a court's finding there was no violation after an adversary hearing "would not implicitly be admitting error in its prior finding of probable cause. Its position most probably would merely reflect the benefit of a more complete view of the evidence afforded by an adversary hearing." *Cf. Rouse v. Scottsdale Unified Sch. Dist. No. 48*, 156 Ariz. 369, 374, 752 P.2d 22, 27 (App. 1987) (absent showing of actual bias or partiality, due process not violated when school board assumed investigative/prosecutorial and adjudicative roles).

## Conclusion

**¶19**     Lisa has not established beyond a reasonable doubt that § 8-862 is facially unconstitutional. And in the absence of any claim of actual bias or unfairness by the juvenile court or any challenge as to the sufficiency of the evidence, the court's order terminating Lisa's parental rights to Julian is affirmed.

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

CONCURRING:

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

15