NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

GLADESA A., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, N.A., *Appellees.*

No. 1 CA-JV 19-0153
FILED 2-18-2020

Appeal from the Superior Court in Maricopa County
No. JD 33945
The Honorable Lisa Daniel Flores, Judge

**AFFIRMED**

COUNSEL

David W. Bell, Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Michael J. Brown joined.

---

**C A M P B E L L**, Judge:

¶1   Gladesa A. ("Mother") appeals from the superior court's order terminating her parental rights. Mother argues (1) insufficient evidence supports the court's finding that DCS made diligent efforts to provide appropriate reunification services under A.R.S. § 8-533(B)(8)(c); (2) DCS's witnesses were not credible; and (3) the court violated her due process rights by precluding her trial attorney from pursuing a particular line of questioning. Here, sufficient evidence supports the court's findings of diligent efforts and witness credibility, and because Mother's due process rights were not violated, we affirm.

**BACKGROUND**

¶2   Mother is the biological mother of a child born in 2007. He was medically fragile due to a hole in his heart. Doctors recommended a procedure to address the problem in 2014. Mother failed to bring him to the hospital for his procedure and then again for his rescheduled procedure. In February 2017, he was brought to the emergency room for abdominal pain, severe anemia, and weight loss leading to open heart surgery to remove a pulmonary embolism and to repair the preexisting hole in his heart. The nurse's notes indicated that Mother did not help care for the child while he was hospitalized.

¶3   The Department of Child Safety ("DCS") filed a dependency petition in March 2017 alleging that the child was dependent as to Mother.[1] DCS asserted Mother neglected to provide for his basic care and medical needs, she suffered from mental health and substance abuse issues, and she had engaged in child abuse. DCS took temporary custody of the child while he remained hospitalized. Once released from the hospital, he was placed in foster care. In June 2017, the superior court adjudicated child dependent as to Mother. The court adopted a case plan of family reunification which

---

[1]  The dependency petition also included a half-sibling which was later dismissed from the dependency.

changed later to family reunification concurrent with severance and adoption.

¶4          DCS referred Mother for parent-aide services, a psychological evaluation, Ph.D.-level trauma therapy, urinalysis testing, substance abuse assessment, and provided transportation. DCS also provided a case aide and offered Mother therapeutic visitation with her son. Mother participated in a psychological evaluation, but it took her four months to complete such evaluation. Shortly after the evaluation, Mother moved to Michigan. DCS attempted to provide an-out-of-state referral for therapy. Before they were able to implement therapy, Mother moved back to Arizona. After receiving recommendations, Mother began trauma therapy in October 2018. In the summer of 2018, the superior court changed the case plan from family reunification concurrent with severance and adoption to severance and adoption, and DCS moved to terminate Mother's parental rights based on the allegation that the child had been in an out-of-home placement for fifteen months and Mother had been unable to remedy the circumstances that caused the child to be in out-of-home placement. DCS later amended the petition to include an allegation of willful abuse by Mother.[2]

¶5          After a contested severance hearing, the superior court specifically addressed Mother's lack of credibility, finding that "Mother failed to corroborate her testimony with proof that she could have provided." The court cited examples of Mother's unsubstantiated testimony regarding child's enrollment at school, the advice from child's cardiologist about the urgency of the corrective heart surgery, and the frequency of Mother's communication with the DCS case manager. In contrast, the court found both the case manager and DCS's unit psychologist, Dr. Erin South, credible.

¶6          The court found DCS had established the statutory ground of fifteen months time in care, that termination was in the child's best interest, and that DCS made diligent efforts to provide Mother with reunification services. Mother timely appealed.

## DISCUSSION

¶7          Mother argues insufficient evidence supports the superior court's order terminating her parental rights on the statutory ground of

---

[2]     At the close of the State's evidence, the court granted Mother's motion to dismiss the ground of abuse alleged against Mother.

fifteen-months out-of-home placement, that DCS's witnesses were not credible, and that the superior court violated her due process rights.

## I.     Diligent Efforts to Provide Reunification Services

**¶8**          Mother argues the superior court erred when it found DCS made diligent efforts to provide reunification services. We will not disturb the superior court's termination of parental rights unless the court's factual findings are clearly erroneous—that is, unless no reasonable evidence exists to support them. *See Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 78–79, ¶ 9 (App. 2001).

**¶9**          The superior court may terminate parental rights under A.R.S. § 8-533(B)(8)(c) if DCS "has made a diligent effort to provide appropriate reunification services." Here, reasonable evidence supports the superior court's finding of diligent efforts because DCS provided Mother access to all services she now claims DCS should have provided.

**¶10**          DCS satisfies its obligation to make reasonable efforts to reunify the family when it provides the parent "with the time and opportunity to participate in programs designed to help [Mother] become an effective parent." *Maricopa Cty. Juv. Action No-JS-501094*, 180 Ariz. 348, 353 (App. 1994). It is not DCS's duty to force parents to participate in the services they offer. *See id.*

**¶11**          Mother argues that DCS failed to ensure that she received appropriate Ph.D.-level trauma therapy. Although Mother had engaged in Masters-level therapy, DCS's unit psychologist informed DCS Mother would need to work with a Ph.D.-level therapist to adequately address her past trauma. DCS eventually provided Ph.D.-level therapy, and Mother began participating in October 2018.

**¶12**          Still, Mother argues DCS's efforts were insufficient because it "took . . . a year to get [Ph.D.-level] therapy in place." But this argument fails to acknowledge Mother's own causal role in the delay. DCS scheduled Mother for a psychological evaluation, but Mother postponed the appointment for four months. Based on the recommendations from that psychological evaluation, DCS referred Mother for trauma therapy, but shortly thereafter, Mother moved to Michigan and failed to stay in contact with DCS. The case manager testified Mother could have sped up the "very difficult process" of arranging service with an out of state provider by helping DCS locate a therapist in Michigan, but Mother did not provide any information. While DCS was trying to arrange services in Michigan, Mother moved back to Arizona. As soon as Mother moved back to Arizona, DCS

sent another referral for Ph.D.-level therapy. Mother commenced Ph.D-level therapy with Dr. Metheka in October 2018. The superior court had a reasonable evidentiary basis for finding DCS made diligent efforts, despite the delay.

¶13            Mother further argues that even after DCS set up trauma therapy, the case manager's failure to communicate the goals of therapy to Mother's therapist rendered this service ineffective. But the case manager testified that the goals of therapy had been provided to Dr. Metheka. DCS's psychologist also testified that the goals included "taking responsibility and accountability," which would require an "understanding of . . . how her own history and trauma has impacted her ability to parent." And, in her own testimony, Mother explained that she discussed her need for trauma therapy with Dr. Metheka, confirming Dr. Metheka was aware that addressing trauma was among Mother's goals. Accordingly, the record supports a finding that DCS adequately communicated the goal of addressing Mother's need for trauma therapy.

¶14            Mother also contends that DCS did not make diligent efforts to provide transportation because Mother had to travel long distances to get to her therapy appointments. "DCS is not required to provide every conceivable service." *Maricopa Cty. Juv. Action No-JS-501094*, 180 Ariz. at 353. Also, even if inconvenient, DCS did provide transportation via taxi services beginning in January 2019. To the extent Mother argues DCS could have provided taxi service sooner, Mother confirmed she was able to take the bus to her therapy sessions. The superior court did not abuse its discretion finding DCS made diligent efforts to provide Mother transportation.

¶15            Lastly, Mother asserts that DCS failed to provide enough opportunities for visitation after she returned to Arizona. Failure to provide visitation does not foreclose termination of parental rights. *See Maricopa Cty. Juv. Action No-JS-501094*, 180 Ariz. at 353. Here, DCS did provide visitation. Mother was permitted one two-hour visit per month with her son while she lived in Michigan, which continued when she moved back to Arizona. Dr. South testified that increases in visitation would have to go at the child's pace. In part, DCS did not increase visitation because of the child's reluctance to visit Mother. Regardless, the record shows DCS provided visitation opportunities to Mother consistently, and therefore the superior court did not abuse its discretion in finding that DCS made reasonable efforts to provide visitation.

## II. Credibility of Witnesses

¶16 Mother argues that the superior court erred by finding the case manager and Dr. South to be credible witnesses. As the trier of fact in a termination proceeding, the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). Accordingly, we will not reweigh evidence, but rather we view all evidence and reasonable inferences therefrom in the light most favorable to affirming the superior court's order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). Here, the superior court expressly found "[w]here Mother's testimony was contradicted by [DCS] witnesses, the Court believed [DCS's] witnesses." This finding falls squarely within the superior court's discretion, and we will not independently reevaluate the court's credibility determinations.

## III. Due Process

¶17 Mother argues the superior court violated her due process rights when it precluded her trial attorney from pursuing a line of questioning involving information from before the dependency adjudication. Mother claims the court later "heav[ily]" relied on this information in reaching its decision. We review constitutional issues de novo. *See Lisa K. v. Ariz. Dep't. of Econ. Sec.*, 230 Ariz. 173, 177, ¶ 9 (App. 2012).

¶18 Here, the superior court attempted to redirect Mother's counsel's focus from events that took place prior to the dependency adjudication. The court did not, however, preclude counsel from discussing pre-dependency information. The judge said, "since the State . . . went into some of the historical information I will let you go there . . . ." Therefore, Mother's claim is factually inaccurate. To the extent Mother's counsel felt constrained by the court's statement, that is belied by the fact that Mother's counsel elicited testimony about pre-dependency information, even after the court attempted to refocus the questioning. Counsel questioned Mother about her prescription drug use from 2013 to 2017, her son's schooling before the dependency, and her Masters-level counseling prior to the filing of the dependency action. Accordingly, Mother's contention that she was precluded from discussing information occurring prior to the dependency is not borne out on the record. The court did not violate Mother's due process rights.

**CONCLUSION**

¶19        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA