NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

TIMOTHY JOHN BENNIE, II, *Petitioner/Appellant*,

*v.*

ASHLYN BRIANNE JOHNSON, *Respondent/Appellee*.

No. 1 CA-CV 22-0026 FC
FILED 8-2-2022

Appeal from the Superior Court in Maricopa County
No. FC 2015-053306
The Honorable Melissa Iyer Julian, Judge

**AFFIRMED**

APPEARANCES

Timothy John Bennie, II, Phoenix
*Petitioner/Appellant*

Law Offices of Vescio & Seifert PC, Glendale
By Theresa L. Seifert
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

¶1        Timothy Bennie II (Father) appeals from orders modifying legal decision-making, parenting time, and child support. He contends that the modification was contrary to his son's best interests, that he did not receive a fair hearing, and that the family court made evidentiary errors. Finding these arguments without merit, we affirm.

**BACKGROUND[1]**

¶2        Father and Ashlyn Johnson (Mother) are the unwed parents of Christopher, born in 2014.[2] In 2016, Mother and Father stipulated to an order giving them joint legal decision-making authority and equal parenting time. The following year, Father was arrested after shooting a handgun at another vehicle during a car chase. After pleading guilty to unlawfully discharging a firearm (a class 6 felony), Father was placed on probation for three years'. In late 2018, Father was incarcerated for two months after being arrested for violating his probation and possessing fentanyl.

¶3        Citing Father's drug use and incarceration, Mother petitioned the court for modification. Father admitted having a substance abuse problem,[3] but he claimed to have addressed the problem by completing anger management courses and participating in drug treatment, including random drug testing, for several months. Although the family court expressed concerns about Father's potential for relapse, it found those concerns would be "minimized" by his continued commitment to drug

---

[1]        We view the facts in the light most favorable to affirming the family court's rulings. *Vincent v. Nelson*, 238 Ariz. 150, 155, ¶ 17 (App. 2015)

[2]        We use a pseudonym to protect the minor's identity.

[3]        Father had also tested positive for marijuana in 2015.

treatment and testing. The court ordered Father to submit to drug testing and conditioned his parenting time on his compliance with the testing regime, but otherwise declined to modify the 2016 orders. Between August 2019 and January 2021, Father failed to appear for drug testing.

¶4            In February 2021, the police arrested Father after another violent incident that was the catalyst of the current proceedings. The incident occurred around 2 a.m., during Father's parenting time, outside a house owned by Father's mother (Grandmother). Grandmother discovered Father and his fiancée (Fiancée) using Percocet and fentanyl in a car parked on the property. At the time, Christopher was sleeping alone inside a one-room cottage behind the main house. When Grandmother confronted Father, he "got mad," and despite being a prohibited possessor, "grabbed [Fiancée's] loaded firearm, racked the slide[,] chambering a round[,] and pointed it at [Grandmother's] head," threatening to "blow her head off" if she called the police.

¶5            Undeterred, Grandmother called the police. The arresting officers found the gun in the cottage, under a night-stand, beside the bed where six-year-old Christopher lay sleeping. Before being driven away, Father asked the arresting officers if he could say goodbye to Christopher so, in the wee hours of the morning, Christopher was brought outside to see Father leaving in a police car.

¶6            Later that morning, a second skirmish occurred outside Grandmother's house—this time involving Mother and Grandmother. Mother arrived to collect Christopher—finding Grandmother taking out trash bags Grandmother described as full of "nothing but drugs" from the cottage. An argument ensued, culminating in a clash between Mother's foot and Grandmother's groin. Grandmother claimed Mother kicked her; Mother claimed Grandmother "charged" her. Police returned to the scene, and Mother was later charged with misdemeanor assault.

¶7            After Father's arrest, Mother again petitioned to modify legal decision-making, parenting time, and child support. The court appointed an advisor to investigate the circumstances. The advisor interviewed Mother, Father, and Christopher, as well as Grandmother, Fiancée, and Mother's partner. She reviewed reports from the Phoenix Police Department and the Department of Child Services.

¶8            In November 2021, the court held a hearing on Mother's petition, taking testimony from Mother, Father, and the advisor, and admitting the advisor's report into evidence. By the date of the hearing,

Father had been incarcerated for about four months and had pled guilty to two domestic violence offenses—disorderly conduct (a class 6 undesignated felony) and illegally possessing a firearm by a prohibited possessor (a class 4 felony)—but had not yet been sentenced.[4]

**¶9**        After the hearing, the family court found that Father's continued drug abuse and violent behavior was a significant change in circumstances justifying modification, that Father's conduct had negatively affected Christopher, and that an award of substantial parenting time to Father would endanger the child. The court also found father had engaged in domestic violence against Grandmother. Based on these findings, the court awarded Mother sole legal decision-making authority, designated Mother the primary residential parent, and ordered Father to pay Mother child support. The court awarded Father two hours of weekly, therapeutically-supervised parenting time. Father timely appealed.

## DISCUSSION

**¶10**        Father challenges the family court's modification of legal decision-making, parenting time, and child support, raising several procedural and evidentiary issues. We review orders modifying legal decision-making, parenting time, and child support for an abuse of discretion. *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019) (legal decision-making and parenting time); *Candia v. Soza*, 251 Ariz. 321, 324, ¶ 7 (App. 2021) (child support). Under this standard, we will not reweigh the evidence or second-guess the court's credibility determinations. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). We must accept the family court's findings of fact unless they are clearly erroneous, considering only whether the evidence reasonably supports them. *Id*. We review the court's legal conclusions, matters of statutory interpretation, and alleged constitutional violations de novo. *DeLuna*, 247 Ariz. at 423, ¶ 9; *Lisa K. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 173, 177, ¶ 9 (App. 2012).

---

[4]        We take judicial notice of the records of the Superior Court. *Vera v. Rogers*, 246 Ariz. 30, 32, ¶ 6 n.1 (App. 2018). After the family court's final decision, but before Father filed his notice of appeal, Father was placed on three years of probation.

**I.      Modification of Legal Decision-Making and Parenting Time[5]**

**A.      Best Interests Findings**

**¶11**          Father first challenges the family court's findings regarding what was in Christopher's best interests, including those related to Father's domestic violence and substance abuse. Orders modifying legal decision-making and parenting time must be "in accordance with the best interests of the child[,] . . . consider[ing] all factors that are relevant to the child's physical and emotional well-being." A.R.S. § 25-403(A); *see Backstrand*, 250 Ariz. at 343, ¶ 14. The court must consider at least the 11 factors listed in A.R.S. § 25-403(A) and, if decision-making is at issue, the four factors listed in A.R.S. § 25-403.01. As relevant here, the court must also consider whether the parents have engaged in domestic violence or substance abuse. *See* A.R.S. §§ 25-403.03, -403.04. In contested cases, the court must make record findings about "all relevant factors" and "the reasons for which the decision is in the best interests of the child." A.R.S. § 25-403(B). Here, the court made record findings on all factors listed in A.R.S. §§ 25-403(A) and -403.01, and it made findings about Father committing domestic violence against Grandmother and his "admitted history of substance abuse."

**¶12**          Father argues the family court erred by concluding he had engaged in domestic violence against Grandmother without finding that each factor listed in A.R.S. § 25-403.03(C) had been proven. *See* A.R.S. § 25-403.03(C) (listing types of evidence the court may consider "[t]o determine if a person has committed an act of domestic violence"). But the factors provided in A.R.S. § 25-403.03(C) are not elements required for a finding of domestic violence. They are merely "relevant factors" the court "[must] consider" in making the determination. *See* A.R.S. § 25-403.03(C)(2), (7) (requiring the court to consider "[p]olice reports" and "[w]itness

---

[5]          Father also argues that Mother's petition did not set forth detailed facts supporting modification as required by A.R.S. § 25-411(L) and that the court's findings did not justify a finding of a substantial and continuing change in circumstances. *See Backstrand v. Backstrand*, 250 Ariz. 339, 343, ¶ 14 (App. 2020) (explaining that, before considering whether modification is in child's best interests, court must first determine whether "there has been a change of circumstances materially affecting the welfare of the child" (quotation omitted)). Father is judicially estopped from raising these arguments because he took a contrary position in the family court by also requesting modification. *See In re Marriage of Thorn*, 235 Ariz. 216, 222, ¶ 27 (App. 2014).

testimony"). The court considered the factors relevant in this case, namely Father's testimony and the court-appointed advisor's report, which described witness statements and the police report documenting the domestic violence. Thus, the court complied with A.R.S. § 25-403.03(C).

**¶13** Father also appears to fault the family court for failing to specify what evidence supported particular findings. Our cases, however, find error when courts fail to make findings altogether, not when they fail to support them with citations to the record. *See Nold v. Nold*, 232 Ariz. 270, 274, ¶ 15 (App. 2013) (collecting cases). Father cites no legal authority, and we can find none, supporting a requirement that the court must identify what evidence supports each finding in its decision.

**¶14** Finally, Father argues the family court erred by failing to find clear and convincing evidence that his drug abuse criminal activity, and domestic violence was ongoing by under- or overestimating the significance of various facts and by overlooking contrary evidence. There is no heightened standard of proof for best-interests findings, however, and the weight to assign evidence is the sole province of the family court. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009) ("Our duty on review does not include re-weighing conflicting evidence or redetermining the preponderance of the evidence."). The evidence might reasonably support other findings, but we must consider only whether the evidence reasonably supports the family court's findings. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 346, ¶ 5 (App. 1998). The evidence supports the court's findings here, so the court did not abuse its discretion.

### B. Legal Decision-Making

**¶15** Father next argues the family court erred by failing to find that joint legal decision-making would endanger Christopher. But the court is not required to make an endangerment finding to award sole decision-making. "[T]he court may order sole legal decision-making or joint legal decision-making," after "determining the level of decision-making that is in the child's best interests." *See* A.R.S. § 25-403.01(A), (B). Furthermore, because of Father's recent drug abuse, there was a presumption that joint decision-making would be contrary to Christopher's best interests. *See* A.R.S. § 25-403.04(A) (establishing a rebuttable presumption that joint legal decision-making by the parent who has abused drugs within 12 months of filing the petition for modification is not in the child's best interests). Father had the burden of rebutting this presumption, *see* A.R.S. § 25-403.04(B), but he offered no documentary evidence of his sobriety, and he told the court-appointed advisor that he was concerned about relapsing

if he went to prison. Thus, the court did not abuse its discretion by awarding Mother sole legal decision-making authority.

### C. Parenting Time

**¶16** Father next contends the family court erred by limiting and restricting his parenting time. First, citing A.R.S. §§ 25-403.01(D) and -411(J),[6] Father argues the court failed to make factual findings showing that maintaining his parenting time would seriously endanger Christopher. *See* A.R.S. §§ 25-403.01(D) (requiring award of "reasonable parenting time" to a parent who is not awarded sole or joint legal decision-making, unless the court finds parenting time "would endanger the child's [well-being]"), -411(J) (prohibiting a court from "restrict[ing] a parent's parenting time rights unless it finds that the parenting time would endanger seriously the child's [well-being]"). The court, however, made an express endangerment finding:

> **THE COURT FINDS** that parenting time that ensures that Father will have substantial, frequent, meaningful and continuing contact with the child would endanger the child's physical, mental, moral or emotional health because Father

---

[6] Father also cites A.R.S. § 25-411(A) in his endangerment argument. *See* A.R.S. § 25-411(A) (requiring leave of court and affidavit showing child's well-being "may [be] seriously endanger[ed]" to petition for modification earlier than one year after prior orders). Section 25-411 is a preliminary procedural statute, and, typically, any alleged noncompliance must be challenged by special action, prior to resolution on the merits. *In re Marriage of Dorman*, 198 Ariz. 298, 302–03, ¶¶ 11–12 (App. 2000) (explaining that appellant "will have great difficulty showing prejudice . . . after a hearing has occurred"). Moreover, the family court's April 2019 orders permitted Mother to seek modification "notwithstanding the provisions of A.R.S. § 25-411(A)" should Father fail to comply with the court's drug testing orders. Father has not argued that the court's April 2019 orders did not effectively nullify A.R.S. § 25-411(A)'s serious endangerment requirement here, and he did not object to modification on this basis in the family court. Therefore, Father has waived any argument that the modification did not comport with A.R.S. § 25-411. *See Englert v. Carondelet Health Network*, 199 Ariz. 21, 26–27, ¶ 13 (App. 2000) (explaining issues raised for first time on appeal are generally waived); *see also Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009) (explaining failure to develop argument with citation to record and legal authority can lead to waiver).

has continued to abuse drugs during his parenting time with the child and has failed to submit to random testing as previously ordered. Father has continued to engage in a pattern of violent behavior culminating in yet another criminal conviction when he threatened his own Mother with a firearm and was arrested earlier this year. Father's testimony shows a lack of remorse or any accountability for his behavior or how it has negatively affected his son. The child was with Father and witnessed his arrest, no doubt traumatic for the child. The child also described the ways in which Father and his girlfriend mistreated the child during his interview with the court appointed advisor.

The court also found Christopher would be endangered because Father "continu[ed] to reside with [Fiancée] who also abuses drugs." Father does not appear to dispute that these were findings of *serious* endangerment. Rather, he argues Christopher was not "in any 'present' danger" because his alleged assault on Grandmother occurred nine months before the hearing, because the charges he pled guilty to were classified as non-dangerous and non-violent, and because the evidence that he pointed the handgun at Grandmother was unreliable hearsay. In essence, Father suggests the evidence of his assault on Grandmother was not persuasive or credible. We will not reweigh the evidence or second-guess the court's credibility determinations. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019). The court's endangerment finding is reasonably supported by its factual findings, and the record reasonably supports its factual findings.

¶17            Second, Father argues the family court's parenting-time orders violated A.R.S. § 1-601, which provides as follows:[7]

A. The liberty of parents to direct the upbringing, education, health care and mental health of their children is a fundamental right.

---

[7]    In a related argument, Father contends the family court erred by failing to balance "[t]he state's interest in investigating any reports of alleged harm to [Christopher] and [his] interest in his familial right of association." We find this argument waived because Father did not raise it in the family court, *see Englert*, 199 Ariz. at 26–27, ¶ 13, and has not developed it with citation to legal authority. *See Ritchie*, 221 Ariz. at 305, ¶ 62.

B. This state, any political subdivision of this state or any other governmental entity shall not infringe on these rights without demonstrating that the compelling governmental interest as applied to the child involved is of the highest order, is narrowly tailored and is not otherwise served by a less restrictive means.

Section 1-601, however, is part of the Parents Bill of Rights, which concerns parents' rights to make choices about education, religion, health care, criminal proceedings, and child welfare investigations. *See* A.R.S. § 1-602. The rights protected by A.R.S. § 1-602 fall within legal decision-making, not parenting time. Regardless, Father has not shown how an alternative arrangement, such as regular supervised parenting time, would have been better for Christopher. The record shows Father has not taken full responsibility for his violent behavior, drug problem, or the trauma Christopher suffered as a result. Christopher told the advisor Father "cusses" at him and "is sometimes mean," and the advisor recommended, "supervised parenting time, possibly in a treatment setting." *See* A.R.S. § 25-403.03(F)(2) (requiring court, in case where parent commits domestic violence but proves parenting time will not harm child, to "place conditions on parenting time that best protect the child," which may include an "[o]rder that an agency specified by the court must supervise parenting time"). Given these facts, the court did not abuse its discretion in ordering therapeutic supervision.

¶18            Finally, Father argues the family court erred by citing an irrelevant statute, A.R.S. § 25-403.02(E), following a finding that its parenting time orders were "practical and also maximize[d] each parent's parenting time to the extent it [wa]s in [Christopher's] best interests." *See* A.R.S. § 25-403.02(E) ("Shared legal decision-making does not necessarily mean equal parenting time."). The court likely meant to cite Subsection B of A.R.S. § 25-403.02. *See* A.R.S. § 25-403.02(B) ("Consistent with the child's best interests . . . , the court shall adopt a parenting plan . . . that maximizes their respective parenting time.). Father has not shown how this clerical error caused prejudice, so it is not grounds for reversal. *See Creach v. Angulo*, 189 Ariz. 212, 214 (1997) (error reversible only if prejudicial).

### D.    Parenting Plan

¶19            Father next challenges the sufficiency of the family court's parenting plan. Specifically, citing A.R.S. § 25-403.02(C)(6), he contends the court erred by omitting a time limit on his parenting time restrictions, a reunification plan, and a procedure for periodic review of the parenting

plan. Section 25-403.02(C) requires a parenting plan to include at least eight specified elements, including, as relevant to Father's arguments, "[a] procedure for periodic review of the plan's terms by the parents." A.R.S. § 25-403.02(C)(6). Section 25-403.02(C) does not expressly require a time limit for parenting-time restrictions or a reunification plan. The family court has the discretion to structure parenting time along a timeline or to create a reunification program if doing so would serve the child's best interests. *See, e.g.*, *Berkel v. Berkel*, 1 CA-CV 19-0829 FC, 2020 WL 7353763, at *2–3, ¶¶ 12, 14–15 (Ariz. App. Dec. 15, 2020) (mem. decision). But Father cites no authority that requires time limits or reunification plans. Moreover, the parties' 2016 stipulated parenting plan included a procedure for yearly review and none of the court's subsequent orders altered that procedure.

## II.    Procedural Challenges

### A.    Due Process[8]

**¶20**        Father first raises what appears to be a due process challenge, arguing that the court ignored his position and evidence, cut his testimony short, and prevented him from calling witnesses. Parents contesting modification have a due-process right "to be heard at a meaningful time and in a meaningful manner." *Volk v. Brame*, 235 Ariz. 462, 468, ¶¶ 19–20 (App. 2014) (quotation omitted). Nonetheless, "the family court enjoys broad discretion to 'impose reasonable time limits on all proceedings," *id.* (quoting Ariz. R. Fam. Law P. 22(1)), and to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence." Ariz. R. Evid. 611(a).

**¶21**        The hearing transcript reveals no violation of Father's procedural rights. The family court asked Father to explain what he sought for modification. It allowed him to answer in the narrative and asked him about his version of events, particularly the incident with Grandmother. Father marked six exhibits for admission, but he did not ask the court to admit them or mention any of them during his testimony. After his testimony, the following exchange occurred:

---

[8]       Father contends the family court misrepresented the procedures used, evidence presented, and witnesses appearing at the evidentiary hearing as well as what evidence the court reviewed. These arguments are waived as Father fails to develop them with specific citations to the record and legal authority. *See Ritchie*, 221 Ariz. at 305, ¶ 62.

> THE COURT: Okay. Anything else that you want to say in support of your position?
>
> [FATHER]: I mean, not -- not really. There's not really much I can say.
>
> THE COURT: Okay. I'm going to take this under advisement so I can type up my ruling.

Father did not interject to inform the court that he wished to provide further testimony, introduce exhibits into evidence, or call witnesses. In sum, the court provided Father a meaningful opportunity to be heard.

**¶22** Father also contends the court erred by failing to timely set the evidentiary hearing, failing to make accommodations for his lack of legal representation, and coercing him to admit to criminal acts in violation of his Fifth Amendment rights.[9] These arguments are waived because Father fails to develop them with citations to the record or legal authority. *See Ritchie*, 221 Ariz. at 305, ¶ 62. Waiver aside, the hearing occurred slightly more than seven months after Mother petitioned for modification, *cf. Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985) ("A 9-month adjudication is not, of course, unconstitutionally lengthy *per se*."); "[w]e hold unrepresented litigants in Arizona to the same standards as attorneys," *Flynn v. Campbell*, 243 Ariz. 76, 83, ¶ 24 (2017); and Father expressed no desire to remain silent about his criminal conduct. *Cf. Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (holding a suspect in custodial interrogation must unambiguously invoke a right to remain silent). Thus, those three arguments are without merit.

### B. Judicial Bias

**¶23** Father next contends the assigned judge was biased.[10] "Bias is a hostile feeling or spirit of ill-will . . . towards one of the litigants." *Simon v. Maricopa Med. Ctr.*, 225 Ariz. 55, 63, ¶ 29 (App. 2010) (quotation omitted). We presume trial judges are free of bias. *Id.* To overcome this presumption,

---

[9]     U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself, . . . .").

[10]     Father alleges the judge violated the Rules of Judicial Conduct. We lack jurisdiction to consider these allegations. In Arizona, the Commission on Judicial Conduct and the Supreme Court are responsible for judicial discipline. *See Matter of Peck*, 177 Ariz. 283, 284–85 (1994).

the challenging party must set forth specific facts that prove bias by a preponderance of the evidence. *Id.* Generally, the basis for disqualification "must arise from an extra-judicial source and not from what the judge has done in [her] participation in the case." *Id.* (quotation omitted); *see also In re Aubuchon*, 233 Ariz. 62, 66-67, ¶ 17 (1994) ("[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even . . . judges, sometimes display do not establish bias or partiality." (quotation omitted)).

¶24 As evidence of bias here, Father argues the assigned judge never sanctioned Mother, questioned him in a hostile manner, ignored contrary evidence, and used to be a member of a women's rights organization. Father also faults the judge for offering to admit several exhibits, believing them to be Mother's, but later failing to provide him similar guidance, after realizing the exhibits were his. And he speculates whether the judge "may have" prejudged the outcome of the case because she informed the parties after the hearing of what her ruling would be and issued a ruling the next morning.

¶25 Except for the allegation about the assigned judge's prior affiliation, all of these facts concern her participation in the case and are therefore not probative of judicial bias.[11] The fact that the judge reached a conclusion immediately after receiving the evidence is not probative of whether she had reached a conclusion before hearing the evidence. Finally, the allegation about the judge's former membership in an organization Father describes as having "a mission of achieving gender parity" is too speculative to prove bias. *See Costa v. Mackey*, 227 Ariz. 565, 571, ¶ 12 (App. 2011). ("A change of judge for cause is not warranted if based merely on speculation, suspicion, apprehension, or imagination." (quotation omitted)). Taken together, Father's arguments fall well short of meeting his burden to overcome the presumption of neutrality.

---

[11] Having offered to aid Mother in admitting her exhibits, the court could have extended the same courtesy to Father. Father has not argued how he was prejudiced by the omission of this evidence, however, and ultimately, it was his responsibility to introduce evidence, not the court's. *Flynn*, 243 Ariz. at 84, ¶ 24 ("[C]ourts may not afford special leniency to pro se litigants.").

### C.      Father's Petition to Enforce Parenting Time

**¶26**       Finally, Father argues the court erred by failing to address his petition to enforce the family court's 2016 parenting-time orders. In his petition, Father claimed that Mother had prevented him from exercising his parenting time. The court had meant to consider Father's petition at the hearing on Mother's petition for modification, but neither the court nor the parties mentioned Father's petition during the hearing. "When a court fails to expressly rule on a motion, we deem it denied." *State v. Mendoza-Tapia*, 229 Ariz. 224, 231, ¶ 22 (App. 2012). And here, the court's implicit denial was not an abuse of discretion. Father's petition was clearly mooted by the court's 2021 parenting-time orders. Once the court issued the modification, there was no basis to enforce the 2016 parenting-time orders, particularly because the new orders significantly curtailed Father's parenting time. Nothing prevents Father from filing a new petition should Mother fail to comply with the court's current orders.

## III.    Evidentiary Issues[12]

### A.      Hearsay Evidence

**¶27**       Father argues the family court violated the rules of evidence by considering hearsay statements in the court-appointed advisor's report.[13] Certain Arizona Rules of Evidence, including those governing hearsay, are not applicable in family court unless a party timely requests strict compliance. *See* Ariz. R. Fam. Law P. 2. Father did not request strict compliance, so the court did not err in considering hearsay statements. *See Woyton v. Ward*, 247 Ariz. 529, 533, ¶ 16 (App. 2019). Moreover, Father did

---

[12]      To the extent Father contends the family court erred by failing to call witnesses or to admit evidence sua sponte, by considering unfairly prejudicial character evidence, and by calculating child support without documentary evidence of Mother's income and Christopher's expenses, those arguments are waived because Father fails to develop them with citations to legal authority. *See Ritchie*, 221 Ariz. at 305, ¶ 62.

[13]      Father only cites the Federal Rules of Evidence in his opening brief. The Federal Rules of Evidence are not applicable in state courts. *See* Fed. R. Evid. 101 ("These rules apply to proceedings in United States courts."), 1101. The Arizona Rules of Evidence govern proceedings in Arizona courts. Ariz. R. Evid. 101(a). Because Arizona's rules of evidence often mirror the federal rules, *see, e.g., Phillips v. O'Neil*, 243 Ariz. 299, 302, ¶ 13 (2017), we assume Father intended to reference the Arizona Rules of Evidence.

not object to the admission of the advisor's report, so his argument is also waived on appeal. *See id.* at 534, ¶ 16.

### B. Destruction of Unadmitted Exhibits

**¶28** Lastly, Father contends the family court improperly destroyed his unadmitted exhibits on the day of the hearing. More than three months before the hearing, the court warned Father that it required electronic exhibits and "that any exhibits not offered/received into evidence will be disposed of by the clerk and not returned to counsel and/or the parties." Father did not object to this policy in the family court, so his argument is waived on appeal. *See Englert*, 199 Ariz. at 26–27, ¶ 13. Waiver aside, the family court's policy does not violate Maricopa County's court rules, as Father contends. *See* Ariz. Local R. Prac. Super. Ct. (Maricopa) 2.8(d) (Maricopa Local Rules) (permitting clerk to dispose of exhibits any time beginning 90 days after the conclusion of case). Based on its plain language, Maricopa Local Rule 2.8(d) applies only to exhibits "that [an] attorney or party introduce[es]." Ariz. Local R. Prac. Super. Ct. (Maricopa) 2.8(d)(1). Moreover, Father has not shown how the forewarned destruction of exhibits he did not offer for admission caused prejudice. *See Creach*, 189 Ariz. at 214.

### CONCLUSION

**¶29** For the reasons above, we affirm the family court's November 19, 2021 ruling. As the prevailing party, Mother is entitled to recover her taxable costs on appeal. *See* A.R.S. § 12-341. Mother also requests her attorney's fees on appeal pursuant to A.R.S. § 25-324(A), which authorizes an award of attorney's fees after consideration of the parties' financial resources and the reasonableness of their positions on appeal. The parties appear to have similar financial resources, but Father has taken unreasonable positions on appeal. In violation of ARCAP 13(a)(7), Father raises about a dozen arguments either for the first time on appeal, without adequate citation to the record, or without supporting legal authority. His arguments about legal decision-making and hearsay are contrary to applicable statutes and court rules, and his arguments about due process

misconstrue the record. Therefore, pending her compliance with ARCAP 21, we award Mother her taxable costs and reasonable attorney's fees incurred on appeal.



AMY M. WOOD • Clerk of the Court
FILED:   AA