NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO S.S.

No. 1 CA-JV 25-0102

FILED 12-16-2025

Appeal from the Superior Court in Mohave County
No. S8015SV202400038
The Honorable Aaron Michael Demke, Judge *Pro Tempore*

**VACATED AND REMANDED**

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Sarah R., Phoenix
*Appellee*

Mohave County Public Defender's Office, Kingman
By Bobbie Shin
*Counsel for Appellee S.S.*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Samuel A. Thumma joined.

---

**C A T T A N I**, Judge:

**¶1**        Kenneth S. ("Father") appeals from the superior court's order terminating his parental rights as to his child, S.S., in this private severance action. We vacate and remand because the superior court based its order on facts not alleged as a basis for severance and did not complete the required analysis for severance based on the length of Father's felony prison sentence.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**        Father and Sarah R. ("Mother") have one child in common, S.S., born in 2019. The two shared custody of S.S. and followed an agreed-upon parenting schedule. During a custody exchange in 2023, Father brandished a knife and strangled Mother. Father was convicted of kidnapping, aggravated assault, and simple assault, and he was sentenced to 15 years' imprisonment. Father appealed, but this court affirmed the convictions and sentences.

**¶3**        In October 2024, Mother filed a petition to terminate Father's parental rights and amended the petition two months later. Mother's amended petition alleged four bases for terminating Father's parental rights. First, Mother alleged that Father neglected or abused the child because the child "always had dirty clothes on, dirty undergarments, would come to pick up [and] child was alone in room while dad was high (multiple times)." *See* A.R.S. § 8-533(B)(2). Second, Mother alleged that Father could not discharge parental responsibilities because of "drug [and] alcohol abuse [and] mental illness/anger." *See* A.R.S. § 8-533(B)(3). Third, Mother alleged that Father was deprived of civil liberties because of his felony conviction and that the sentence length deprives the child of a normal home for a period of years because "parent is incarcerated for 15 years on felony charges due to D.V. of Mother." *See* A.R.S. § 8-533(B)(4). Mother further alleged Father's previous acts of domestic violence as another basis for termination. Mother urged that it was in S.S.'s best interests to terminate Father's rights because he was incarcerated, struggled

with anger management, abused drugs and alcohol, and committed domestic violence.

¶4            In February 2025, a court-appointed investigator conducted a social study, which was provided to the court.  The social study suggested that Father's physical assault against Mother caused S.S. great distress.  The study noted that S.S. received regular counseling and was diagnosed with post-traumatic stress disorder ("PTSD") as well as adjustment disorder with mixed disturbance of emotions and conduct.  She also had nightmares.  The social study observed that Father will be incarcerated until S.S. is 18 years old and that a continued relationship with him while he is in a prison facility would cause S.S. stress.  The study further noted that there was a temporary no-contact order but did not list its duration.  The social study's ultimate recommendation was that the court terminate Father's parental rights because it would be in S.S.'s best interests.

¶5            In June 2025, the superior court held a contested termination adjudication hearing.  The court considered the social study and heard testimony from Mother, her mother (S.S.'s grandmother), Mother's friend, and Father.  S.S.'s grandmother testified about S.S.'s negative reaction to Father's parenting time, nightmares, and drawings about her impression of Father.  She also recounted that, after the incident between Mother and Father, S.S. stated, "Daddy punched mommy in face.  Daddy held knife to mommy."  Mother's friend testified that she had seen Father call Mother derogatory names and had observed S.S.'s reaction when Father picked her up and dropped her off.

¶6            Mother presented evidence of a bruise on S.S.,  S.S. screaming and crying in reaction to a custody exchange from Mother to Father, and S.S.'s drawings depicting the assault incident.  Additionally, Mother testified to the strangulation, stating that Father put his hands around her neck, kneed her in the stomach while she was pregnant, and held a knife to her and S.S.  Mother further testified that S.S. expresses fear of Father.

¶7            Father presented evidence of Mother's previous social media posts, which depicted a relationship between S.S. and Father, and he presented evidence that his family tried to contact Mother, but she blocked communications.  Father testified that S.S. was not in Mother's arms during the assault incident, but he acknowledged that she was in the room.  Father agreed that S.S. would cry during Father's pick up times, but he stated that she would stop crying when they left.

**¶8**        The superior court terminated Father's parental rights on multiple grounds. Using a Mohave County form last revised in 2014, the court found the "Neglect/Abuse" ground because "Father has [a] long history of Domestic Violence culminating in the strangulation and kidnapping of Mother by [F]ather that resulted in Felony DV convictions." The court also found two grounds premised on his "Criminal Conviction": both that the nature of his felony conviction proved unfitness to have future custody *and* that the length of his sentence would deprive S.S. of a normal home for a period of years. To support each of the conviction-related grounds, the court found that "Father [is] in DOC for 15 years. Release date is 2037. Child was present at time of incident and witnessed it from her Mother[']s arms. Child has PTSD from this." In addressing best interests, the court stated that "Best interest of Child is served for psychological and emotional benefit to Child as well as potential adoption by Mother's fiancé."

**¶9**        Father timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

**¶10**        The superior court may terminate a parent–child relationship if clear and convincing evidence establishes at least *one* statutory ground for termination and a preponderance of the evidence shows termination to be in the child's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We defer to the superior court's factual findings if supported by reasonable evidence and accept the court's legal conclusions unless clearly erroneous. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478–79, ¶¶ 30–31 (2023).

## I.    Neglect.

**¶11**        Father argues that the superior court relied on facts not alleged in Mother's petition to find the statutory ground for termination based on neglect. He asserts that this departure from the facts underlying Mother's allegation deprived him of due process. We agree.

**¶12**        "[A] parent's interest [in the parent–child relationship] . . . may not be changed without due process and compliance with the statutes involved." *Maricopa Cnty. Juv. Action No. JS-734*, 25 Ariz. 333, 338 (App. 1975). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also Mara M. v.*

*Ariz. Dep't of Econ. Sec.*, 201 Ariz. 503, 507, ¶ 24 (App. 2002). *Compare Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 355–56 (App. 1994) (holding that where the parent has adequate notice of the grounds for termination and the court bases the termination on the grounds in the petition, there is no error).

¶13 Mother's amended petition alleged "Neglect/Abuse" as a statutory ground supporting termination. This ground authorizes termination of parental rights if "the parent has neglected or wilfully abused a child [including] serious physical or emotional injury or situations in which the parent knew or reasonably should have known that a person was abusing or neglecting a child." A.R.S. § 8-533(B)(2).

¶14 As facts supporting this allegation, Mother alleged that Father left S.S. in dirty clothing and undergarments and that he left her alone in her room while he was high. The court concluded that these facts did not establish the neglect ground. The court instead found this ground was established because "Father has long history of Domestic Violence culminating in the strangulation and kidnapping of Mother by [F]ather that resulted in Felony DV convictions." Although Father was arguably on notice of these facts, he was not necessarily on notice that they could be used to establish the neglect ground. Having rejected the only facts Mother alleged to support this ground for termination, the court denied Father due process by relying on different factual underpinnings of which Father lacked adequate notice. We thus vacate the finding of grounds for termination based on neglect.

## II. Felony-Conviction-Related Grounds.

¶15 Preliminarily, as with the neglect ground described above, Father was denied due process in addressing the felony conviction allegation. Mother sought termination based on the length of Father's felony sentence but did not seek termination based on the nature of his felony conviction, a different statutory ground than the length of a felony sentence. *Compare* A.R.S. § 8-533(B)(4) (first portion, where the felony conviction "is of such nature as to prove the unfitness of that parent to have future custody and control of the child, including" examples of specified crimes), *with id.* (second portion, where the sentence for the felony conviction "is of such length that the child will be deprived of a normal home for a period of years"). Nevertheless, the superior court terminated Father's parental rights on both the length of the felony sentence (which Mother had alleged) and the nature of the felony conviction (which Mother had not alleged). The court thus erred and denied Father due process by

finding grounds for termination based on the nature of his felony conviction, a statutory ground that had not been alleged.

**¶16**         Additionally, the superior court's findings as to the length-of-felony-sentence ground are inadequate. This statutory ground authorizes termination of parental rights if an incarcerated parent's felony sentence "is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4). A "normal home" in this context means "a stable and long-term family environment outside a foster care placement, where another parent or a permanent guardian resides and parents the child, and where the incarcerated parent affirmatively acts to maintain a relationship with the child that contributes to rather than detracts from the child's stable, family environment." *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 477, ¶ 27 (2022). In assessing deprivation of a normal home, the court must consider all relevant circumstances, including the six factors enumerated in *Michael J. v. Arizona Department of Economic Security*, 196 Ariz. 246, 251–52, ¶ 29 (2000) (requiring the superior court to "consider all relevant factors, including, but not limited to: (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue").

**¶17**         Mother alleged this termination ground, specifically alleging that Father was sentenced to 15 years' incarceration based on felony convictions stemming from domestic violence he committed against Mother, in front of S.S. The superior court found grounds for termination on this basis, explaining that "Father [is] in DOC for 15 years. Release date is 2037. Child was present at time of [the] incident and witnessed it from her Mother[']s arms. Child has PTSD from this."

**¶18**         These findings, however, addressed only one of the six *Michael J.* factors—the length of Father's sentence. There is no indication that the court considered the other *Michael J.* factors. Although the court noted that S.S. has PTSD, the court did not explain how that fact was relevant to the other *Michael J.* factors, and the court did not otherwise analyze those other factors. Thus, we vacate the finding of grounds for termination based on length of felony sentence and remand for the superior court to reassess termination under the correct legal standard and clarify its findings under *Michael J. See id.*

**CONCLUSION**

¶19      Given these errors regarding each of the termination grounds on which the termination ruling was based, the superior court erred by terminating Father's parental rights. We thus vacate the termination ruling without prejudice to Mother filing an amended petition for termination and/or the superior court re-assessing the felony conviction grounds for severance.



MATTHEW J. MARTIN • Clerk of the Court

**FILED**:      JR